C. Dona VANDERBILT, Plaintiff,

v.

TOWN OF CHILMARK, Pamela Goff, Herbert Hancock, and Alexander Preston, as they constitute the Board of Selectmen of the Town of Chilmark, Defendants.

Civil Action No. 95–12403–JLT.

United States District Court, D. Massachusetts.

June 18, 1997.

Joseph G. Sandulli, John M. Becker, Sandulli, Grace, Shapiro & Horwitz, Boston, MA, for Plaintiff.

Richard W. Renehan, Patrick J. Bannon, Hill & Barlow, Boston, MA, for Defendants.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff, C. Dona Vanderbilt, claims that Defendants discriminated against her in violation of federal and state law. She also alleges that Defendants retaliated against her when she complained of the unlawful discrimination. She seeks damages for, *inter alia*, emotional distress. On February 18, 1997, the court denied Defendants' motion to compel the production of evidence relating to Plaintiff's psychotherapy and allowed Plaintiff's motion for a protective order that would shield that evidence from Defendants. This opinion sets forth the court's reasoning.

## I.

### BACKGROUND

Plaintiff began working for Defendant Town of Chilmark ("Chilmark") in October 1990 as an Administrative Assistant for the Planning Board and the Conservation Commission. She alleges that, in December 1993, she discovered that Chilmark was paying William Elbow, whom it had hired as an Administrative Assistant to the Board of Health at about the same time she was hired, more than it was paying her. Plaintiff claims this wage disparity continued throughout their tenure at Chilmark.

Plaintiff alleges that she made numerous requests that her pay, and that of another female administrative assistant, be raised to a level in line with Elbow's pay. Defendants refused. Plaintiff then filed a complaint of gender discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). On July 24, 1995, MCAD issued a right-to-sue letter.

Plaintiff filed a complaint in this court on November 3, 1995, in which she alleges violations of state and federal discrimination and retaliation laws. In six of the eight counts, Plaintiff seeks damages for emotional distress.

On January 10, 1997, Defendants filed a motion to compel Plaintiff, (1) to produce her psychiatric and psychotherapeutic records, (2) to answer questions at a deposition concerning the substance of any psychiatric treatment, counseling, or psychotherapy she may have undergone, and (3) to allow the deposition of any mental health professionals who have provided such treatment to Plaintiff. Plaintiff filed an opposition to the motion and filed her own motion for a protective order on January 23, 1997. She contends that all information regarding the substance of her psychiatric care, counseling, and psychotherapy is privileged. This court agrees.

## II.

### CHOICE OF LAW

Plaintiff's complaint alleges violations of both federal and state claims. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

■ Federal Rule of Evidence 501 ("Rule 501") states that:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

According to Rule 501, if federal substantive law controls a civil case, federal common law would control questions of privilege. On the other hand, if state substantive law controls, as in a diversity case, Rule 501 instructs a federal court to use the applicable state law of privilege.

■ Rule 501 does not instruct a federal court on which law of privilege to use in a federal question case where the court is also hearing a state law claim pursuant to supplemental jurisdiction. Every circuit that has reached this issue has held that, in a situa-

tion such as the one before this court, the federal law of privilege applies. *See, e.g., Hancock v. Hobbs,* 967 F.2d 462, 467 (11th Cir.1992); *Hancock v. Dodson,* 958 F.2d 1367, 1373 (6th Cir.1992); *von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Thompson Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100, 104 (3rd Cir.1982); *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 n. 3 (7th Cir.1981). Furthermore, the legislative history of Rule 501 supports the use of the federal law of privilege in this situation. The Senate Report accompanying Rule 501 states that "[i]t is also intended that the Federal law of privileges should be ap-. plied with respect to pendent State law claims when they arise in a Federal question case." S.Rep. No. 1277, 93rd Cong., 2d Sess. (1974), *reprinted in,* 1974 U.S.C.C.A.N. 7051, 7059 n. 16. This court, therefore, will use the federal law of privilege to decide the issue before it.

## III.

### ANALYSIS

#### A. Jaffee v. Redmond

The court begins its analysis with the recent Supreme Court case of *Jaffee v. Redmond,* —— U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). In *Jaffee,* the Court held that, under Rule 501, there exists a psychotherapistpatient privilege (the "privilege") under federal common law.[1] *Jaffee,* —— U.S. at ——, 116 S.Ct. at 1931.

In *Jaffee,* Mary Lu Redmond, a police officer in the Village of Hoffman Estates, Illinois, shot and killed Ricky Allen, whom Officer Redmond claimed was about to stab someone. *Id.* at ——, 116 S.Ct. at 1925. The administrator of Allen's estate filed a complaint in Federal District Court claiming that Redmond had used excessive force and had violated Allen's constitutional rights in violation of Rev. Stat. § 1979, 42 U.S.C. § 1983, and the Illinois wrongful death statute. *Id.* at ——, 116 S.Ct. at 1926.

During discovery, the plaintiff in *Jaffee* learned that Redmond had participated in psychotherapeutic counseling after the shooting. *Id.* The plaintiff sought Redmond's counselor's notes, taken during the psychotherapy. *Id.* Redmond refused to allow the disclosure of the notes. *Id.*

In upholding Redmond's refusal, the Supreme Court, for the first time, held that "reason and experience" leads to the conclusion that the privilege exists under Rule 501. *Id.* at —— — ——, 116 S.Ct. at 1928–31. The Court noted that the privilege, "[l]ike the spousal and attorney-client privileges ... is 'rooted in the imperative need for confidence and trust.'" *Id.* at ——, 116 S.Ct. at 1928 (quoting *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980)). The Court recognized both the private interest that patients have in speaking freely during psychotherapy, and the public interest in encouraging troubled people to seek therapy. *Id.* at —— — ——, 116 S.Ct. at 1928–29. The fact that all fifty states plus the District of Columbia have enacted some version of the privilege bolstered the Court's view that "reason and experience" mandated a recognition of the privilege in federal law. *Id.* at —— — ——, 116 S.Ct. at 1929–30.

In order to create an effective privilege that would protect the interests of individuals, the Court explicitly held that decisions regarding the privilege should not be made by balancing the interests of the patient and the value of the evidence. *Id.* at ——, 116 S.Ct. at 1932. The Court was very clear:

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.... [I]f the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain

---

**1.** The Court extended the privilege to licensed social workers engaged in psychotherapy. *Jaffee,* —— U.S. at ——, 116 S.Ct. at 1931. The Defendants do not allege that Plaintiff's therapy was with a person for whom *Jaffee* would not apply. This court will assume, therefore, that the privilege, as found in *Jaffee,* if not waived, protects the communications at issue here.

privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Id.* (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 393, 101 S.Ct. 677, 684, 66 L.Ed.2d 584 (1981)).

The Court recognized that the psychotherapist-patient privilege can be waived. *Id.* at —— n. 14, 116 S.Ct. at 1931 n. 14. The Court, however, did not elaborate on what would constitute waiver of the privilege. In fact, the Court expressly refused to examine the scope of the privilege, noting that "it is neither necessary nor feasible to delineate [the privilege's] full contours in a way that would 'govern all conceivable future questions in this area.' " [2] *Id.* (quoting *Upjohn,* 449 U.S. at 386, 101 S.Ct. at 681).

### B. The Present Case

In the case presently before this court, Defendants argue that Plaintiff has waived the privilege, and they request that this court order Plaintiff to provide certain materials pertaining to the substance of her psychotherapy. They contend that merely by seeking damages for emotional distress, Plaintiff has waived the privilege.

 There are a number of ways for a patient to waive the privilege. A patient could explicitly waive it. It is also possible to waive the privilege through disclosure. That is, if a patient uses the privileged material as evidence herself, she may not then contend that the material is privileged.

 It is a more complicated theory of waiver, however, that occupies the court here. Defendants argue that by seeking

damages for emotional distress, Plaintiff has put her emotional state at issue and, therefore, has waived the privilege.[3] This court disagrees and holds that Plaintiff must use the privileged communication as evidence herself before she waives the privilege.

Since *Jaffee,* a number of courts have held that, solely by placing her mental or emotional state at issue, a patient waives the privilege. *Vasconcellos v. Cybex International, Inc.,* 962 F.Supp. 701, 708–09 (D.Md.1997); *Doolittle v. Ruffo,* 1997 WL 151799 at *2 (N.D.N.Y. March 31, 1997); *Sarko v. Penn–Del Directory Company,* 170 F.R.D. 127, 130 (E.D.Pa.1997). All three courts offered variations of the same reasoning, with *Sarko* going to the greatest depth. It offered three specific reasons for adopting the "mental-state-at-issue" test: (1) that courts ruling before *Jaffee* found waiver when a plaintiff put her emotional or mental state at issue; (2) that, by analogy to the attorneyclient privilege, there is waiver in these circumstances; and, (3) that it would be unfair to enforce the privilege in this situation. This court will now examine these three points.

### 1. Decisions before Jaffee

First, the *Sarko* court noted that, in *Jaffee,* the Supreme Court did not explicitly address waiver or the scope of the privilege, and that cases pre-dating *Jaffee* found waiver when a patient placed her "mental condition at issue." *Sarko,* 170 F.R.D. at 130. But, when deciding cases prior to *Jaffee,* courts did not have *Jaffee's* mandate against balancing the need for the evidence against the patient's interest in the privilege.

---

**2.** The Court did, however, suggest one situation in which the privilege would not apply—when "a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Jaffee,* —— U.S. at —— n. 19, 116 S.Ct. at 1932 n. 19.

**3.** This court assumes, for the sake of argument only, that Plaintiff has put her emotional state at issue by seeking emotional distress damages. It is unclear, however, whether she has in fact done so. In the pre-*Jaffee* case of *Sabree v. United Brotherhood of Carpenters & Joiners of America, Local No. 33,* 126 F.R.D. 422 (D.Mass.1989), a court in this district found that a plaintiff did not

place his mental condition at issue by "[making] a 'garden-variety' claim of emotional distress, not a claim of psychic injury or psychiatric disorder resulting from the alleged discrimination." *Sabree,* 126 F.R.D. at 426.

Because this court holds that, after *Jaffee,* Plaintiff does not waive the privilege simply by placing her emotional state at issue, it does not reach the questions of whether it is necessary for Plaintiff to do more than claim "garden-variety" emotional distress to place her emotional condition at issue or whether she has, in fact, claimed more than "garden-variety" emotional distress.

■ *Jaffee's* "no balancing" instruction drastically changes the waiver formula. When a patient pleads emotional injury, she has not explicitly waived the privilege. All she has done is make her communication with her psychotherapist potentially relevant. That evidence may be harmful, or helpful, to her case. *See Sax v. Sax*, 136 F.R.D. 541, 542 (D.Mass.1991) (stating that in attorney-client privilege, "[t]he test is not whether the information which is the subject of the privilege is 'relevant', the information is usually highly relevant.") After *Jaffee*, a court cannot force disclosure of that evidence solely because it may be extremely useful to the finder of fact. Giving weight to the usefulness of the evidence as a factor in a decision regarding the scope of the privilege would be a balancing exercise that was barred by *Jaffee*.

The *Sarko* court may have read *Jaffee* to stand for the proposition that bright-line certainty is required when delineating the scope of the privilege. But, *Sarko's* "mental-state-at-issue" test does not provide that certainty. Indeed, different courts have come to very different conclusions as to when and under what circumstances a patient actually places her mental or emotional state at issue. *Compare Sabree*, 126 F.R.D. at 426 (holding that plaintiff does not put mental state at issue by "making a 'garden-variety' claim of emotional distress") *with Topol v. Trustees of the University of Pennsylvania*, 160 F.R.D. 476, 477 (E.D.Pa.1995) (holding that plaintiff places mental state at issue simply by "seeking damages for mental and emotional" distress).

Under the "mental-state-at-issue" test, therefore, a patient wold not know with certainty, at the time of her psychotherapy, whether the communication would be privileged at a later date. This uncertainty could "eviscerate the effectiveness of the privilege." *Jaffee*, —— U.S. at ——, 116 S.Ct. at 1932.

### 2. Analogy to attorney-client privilege

Second, the *Sarko* court, following the example of the Supreme Court in *Jaffee*, analogized the privilege to the attorney-client privilege. *Sarko*, 170 F.R.D. at 130. The court recognized that the attorney-client privilege "is waived when the advice of counsel is placed at issue." *Id.* (cites omitted). As a result, the court found that a patient waives the privilege when she places her "mental condition at issue." *Id.*

This court agrees with the process of analogy found in *Sarko*, but disagrees with the result. The attorney-client privilege and the psychotherapist-patient privilege are both "rooted in the imperative need for confidence and trust." *Jaffee*, —— U.S. at ——, 116 S.Ct. at 1928 (quoting *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980)). It is reasonable, therefore, to suggest that the scope of the two privileges should be similar.

The attorney-client privilege is undoubtedly waived if the privileged communication is placed at issue by the client. That is, when the client uses the substance of the attorney-client relationship to further her own cause, she cannot claim that the communication is privileged. For example, if a client uses her reliance on her attorney's advice as a defense, she waives the privilege. Also, if a client sues her attorney for malpractice, she waives the privilege. In contrast, a client does not waive the privilege solely by seeking attorney's fees.

■ Similarly, this court reasons that the privilege is waived if the communication between a psychotherapist and a patient is, itself, put at issue by the patient. A patient whose cause of action relies on the advice or findings of her psychotherapist cannot claim the privilege. If a patient were to sue her psychotherapist for malpractice, the privilege would obviously be waived.

The act of seeking damages for emotional distress is analogous to seeking attorney's fees. The fact that a privileged communication has taken place may be relevant. But, the fact that a communication has taken place does not necessarily put is content at issue.

### 3. Fairness

Lastly, the court in *Sarko* found "that allowing a plaintiff 'to hide ... behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness

and justice.'" *Sarko,* 170 F.R.D. at 130 (quoting *Premack v. J.C.J. Ogar, Inc.,* 148 F.R.D. 140, 145 (E.D.Pa.1993)). This argument harkens back to the understanding that a privilege "cannot and should not at once be used as a shield and a sword." *Inserra v. Hamblett & Kerrigan, P.A.,* 1995 WL 54402 (D.N.H.1995) (citations omitted) (commenting on attorney-client privilege). Once again, this court agrees with the premise, but not its application.

Plaintiff, here, is not using the privileged communication as a sword. Were she to introduce evidence regarding the substance of her conversations with her psychotherapist in order to further her claim of emotional damage, this court would agree that she could not shield the communication from others. She has, however, done no such thing.

### C. The Scope of Waiver

■ This court recognizes that it would be possible for Plaintiff to waive the privilege. Should she use the substance of her communication, by calling her psychotherapist as a witness, for example, or by testifying to the substance of the communication herself, then she would waive the privilege. These would be situations where Plaintiff puts the privileged communication itself at issue.

■ To clarify the scope of the privilege, it is also important to note what it does not protect. Facts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged. And so, for example, if Plaintiff was seeing a psychotherapist before any actionable emotional injury allegedly occurred, the dates of such pre-existing treatment would be available to Defendants. The substance of the psychotherapist-patient communication is privileged. The fact that such communication took place is not.

### IV.

#### CONCLUSION

For the reasons discussed above, on February 18, 1997, the court ordered that, so long as Plaintiff does not call as a witness a person who has provided her with psychotherapy, and does not introduce into evidence the substance of any communication with such a person, the communication between her and her psychotherapist is privileged. The court, therefore, allowed Plaintiff's motion for a protective order and denied Defendants' motion to compel discovery.