Walter F. SORENSON, Jr. and Sarah O. Sorenson, Plaintiffs,

v.

H & R BLOCK, INC., et al., Defendants.

No. Civ.A. 99–10268–DPW.

United States District Court, D. Massachusetts.

Nov. 2, 2000.

---

Brian G. Cafferty, Gelb & Gelb LLP, Paul M. Cimino, Kathleen B. Hogan, Adrienne M. Markham, Goulston & Storrs, Richard M. Gelb, Daniel C. Hohler, Gelb & Gelb, Boston, MA, for defendant.

Anne G. Depew, Assistant U.S. Attorney, Michael J. Pineault, United States Attorney's Office, Boston, MA, for individual party.

Paul J. Klehm, James B. Krasnoo, Andover, MA, for plaintiff.

*MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO QUASH (# 52) AND DEFENDANTS' CROSS–MOTION TO COMPEL THE TESTIMONY OF HILARY P. BRACKEN AND MARY ELLEN DeBIASE (# 65)*

COLLINGS, Chief United States Magistrate Judge.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. Plaintiffs' Complaint

On 9 February 1999, Plaintiffs Walter F. Sorenson, Jr., [hereinafter "Walter Sorenson"] and Sarah O. Sorenson [hereinafter "Sarah Sorenson"], husband and wife, filed a Verified Complaint against Walter Sorenson's tax preparer, H & R Block, Inc., including its related entities and employees [hereinafter, "Defendants"]. The Complaint is premised upon actions commencing in March 1994 and concern Defendants' allegedly unauthorized disclosure of Walter Sorenson's tax return information. Plaintiffs contend that Defendants' allegedly unlawful conduct prompted the Internal Revenue Service and the Massachusetts Department of Revenue to initiate criminal and civil investigations of Walter Sorenson. The jurisdiction of this Court is premised upon the complete diversity of the citizenship of the parties pursuant to 28 U.S.C. § 1332. The Complaint, at page 3, includes the following general damage allegation:

> As a result of the Defendant's [sic] wrongful conduct, the Sorensons have suffered, and will continue to suffer, mental anguish, severe emotional distress, humiliation, personal indignity, emotional pain, embarrassment, and anxiety.

Counts I, II and III of the Complaint allege violations of Massachusetts General Laws [hereinafter "M.G.L."] c. 93A for false and deceptive trade practices. Counts IV, V, and VI allege negligent disclosure, negligent failure to investigate/supervise, and negligent failure to train, respectively. Counts VII and VIII allege breaches of a fiduciary duty. Counts IX and X allege professional malpractice. Count XI alleges intentional and/or negligent infliction of emotional distress.

Count XII alleges breach of contract. Count XIII alleges a breach of the covenant of good faith and fair dealing. Count XIV alleges intentional/negligent misrepresentation. Count XV alleges loss of consortium. With the exception of Counts XI and XIV, which shall be treated separately, Walter Sorenson alleges in paragraphs 77, 86, 92, 97, 104, 111, 116, 121, 126, 131, 147, and 152, respectively, that as a direct and proximate result of the various Defendants' conduct:

> the Plaintiff [Walter Sorenson] was unjustly and unfairly subjected to a criminal investigation by the IRS and to civil audits by the IRS and Mass. DOR, incurred legal fees and has suffered, and will continue to suffer, emotional distress and other damages.

For each of the above thirteen counts, Walter Sorenson demands $5,000,000 in damages, including demands in Counts I, II, and III for "treble damages; but in no event less than double damages," pursuant to M.G.L. c. 93A claims.

Plaintiffs' specific claim for emotional distress—Count XI—alleges the following, more serious past and prospective damages that, upon verification by Walter Sorenson, were manifested through "great bodily harm":

> 135. As a direct and proximate result of the knowing, intentional, willful and/or negligent extreme and outrageous conduct of H & R Block, through its officers, agents, servants or employees, including without limitation, Murphy and defendant Brandenburg, the Plaintiffs suffered severe emotional distress, including physical and mental suffering, shame, humiliation and great bodily harm, and they will continue to so suffer in the future.
>
> **WHEREFORE,** ... plaintiffs ... demand judgment against the defendants for damages sustained in the amount of Five Million ($5,000,000) Dollars, together with interest, costs and attorneys' fees; and such other damages as this Court may award.

Only Sarah Sorenson asserted Count XV—Loss of Consortium—in which she alleged, at paragraph 155, that "[a]s a result of the injuries and damages sustained by her husband Walter F. Sorenson, Jr., described

herein, Sarah O. Sorenson has been deprived of his society and companionship, and has suffered a loss of consortium." Sarah Sorenson also demands $5,000,000 in damages.

In 1994, prior to the initiation of this lawsuit but during the occurrence of the actions from which it arises, Plaintiffs sought the expertise of a licensed counselor, Hilary P. Bracken, L.I.C.S.W., to help them with the health of their relationship.[1] According to Walter Sorenson, counselor Bracken conducted both joint and separate sessions with the Plaintiffs. In 1997, Sarah Sorenson went for an initial consultation with Mary Ellen DeBiase, Ph.D., a licensed psychologist. The subject of Sarah Sorenson's visit to Dr. DeBiase has not been revealed.

### B. Discovery Dispute

On 6 April 2000, Plaintiffs received a Notice of Taking Deposition for Counselor Bracken and Dr. DeBiase. On 12 April 2000, Plaintiffs filed a Motion to Quash (# 52) the Notice because of applicable evidentiary privileges.[2] Plaintiffs further argue that they have not waived their privileges because they have "alleged neither psychic injury or disease nor psychological or psychiatric difficulties of injury or disease or disorder[,] the mere recitation of a complaint for emotionally inflicted harm does not permit defendant to secure the testimony of counselors." (# 52, ¶ 5). Plaintiffs have asserted in their pleading (# 52, ¶¶ 7 and 9), and reiterated at the hearing on the motion, that no psychiatrist or psychologist's testimony, including that of either Ms. Bracken or Dr. DeBiase, will be offered at trial.

1. *See* Deposition Transcript of Walter F. Sorenson, Jr., pertinent parts of which are attached as Exhibit 1 to Defendants' Opposition to Plaintiffs' Motion to Quash and Cross–Motion to Compel the Testimony of Hilary P. Bracken and Mary Ellen DeBiase (# 65).

2. Plaintiffs' Motion to Quash cites no rule or other source of law properly moving this Court to consider its request. Motions to quash are usually brought pursuant to Rules 7 and 26(c) of the Federal Rules of Civil Procedure. By a similar omission, Defendants' Motion to Compel should have been brought pursuant to Rules 7 and 37(a) of the Federal Rules of Civil Procedure. The Court will nevertheless exercise its discretion for the benefit of both parties and

In opposition, Defendants filed a Cross–Motion to Compel the Testimony of Hilary P. Bracken and Mary Ellen DeBiase (# 65) and asserted that depositions of both mental health care providers are proper because Plaintiffs have alleged sufficiently serious claims for emotional distress to constitute a privilege waiver, as evidenced by the value that Plaintiffs place on such damages, to wit, $5,000,000 for each count. Defendants cite also to Plaintiffs' separate and distinct claims for 1) emotional distress, Count XI, and 2) Sarah Sorenson's claim for loss of consortium, Count XV, which is necessarily based upon the earlier count for emotional distress.

Finally, Defendants argue that Plaintiffs have waived their privileges through revealing the substance of the sessions with counselor Bracken, and the providers' identities, as well as the dates and cost of the counseling sessions with both mental health care providers. A hearing was held on 19 July 2000 at which the previously two referred motions were argued. Based on the pleadings and exhibits submitted, the arguments of counsel, and the reasons set forth below, the Court will allow Plaintiffs' Motion to Quash and deny Defendants' Cross–Motion to Compel the Testimony of Hilary P. Bracken and Mary Ellen DeBiase.

## II. CHOICE OF LAW

■ In this diversity jurisdiction action, state law applies to the instant discovery dispute regarding the existence and possible waiver of the applicable evidentiary privilege. *See* Rule 501, Federal Rules of Evidence[3];

consider each motion as though properly motioned to do so.

3. Rule 501 of the Federal Rules of Evidence provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense *as to which State law supplies the rule*

*cf. Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225, 226–27 (D.Mass.1997) (applying federal common law to claims arising under federal question jurisdiction and to pendent state law claims).

## III. DISCUSSION

### A. Privilege—In General

For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.

*Jaffee v. Redmond,* 518 U.S. 1, 9, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (internal quotations and citations omitted).

Privileges exist to shield the substance of the communications necessary for effective mental health treatment between a licensed mental health care provider and his or her patient.

■ Plaintiffs, in their Motion to Quash (# 52), are seeking to prevent their two mental health care providers, Hilary P. Bracken, L.I.C.S.W., and Mary Ellen DeBiase, Ph.D., from being forced to reveal in deposition testimony the substance of their treatment of, and communications with, Plaintiffs. Plaintiffs bear the burden of persuasion to show good cause why the depositions should not go forward. *See* Rule 26(c), Fed.R.Civ. P.; *see also Demers v. LaMontagne,* 1999 WL 1627978 at *2 (D.Mass., 1999) *citing Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y.1996).

### B. Waiver of the Privilege by Asserting Specific Claims

Neither party disputes that the communications between Counselor Bracken and Plaintiffs and between Dr. DeBiase and Plaintiff Sarah Sorenson are privileged under state law. The parties' dispute revolves around potential waivers, or "derogations," of the privilege.

Massachusetts General Laws c. 233, § 20B provides, in pertinent part:

Except as hereinafter provided, in any court proceeding ... a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition. The privilege granted hereunder shall not apply to any of the following communications:—

(c) In any proceeding ... in which the patient introduces his mental or emotional condition as an element of his claim or defense, and the judge ... finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.

Massachusetts General Laws c. 112, §§ 129A and 135A and B extend the privilege to communications between patient and psychologist and patient and social worker respectively. Each of those statutes provide the same exception to the privilege as is found in c. 233, § 20B(c).[4]

■ In construing those statutes, Massachusetts courts have held that a plaintiff seeking damages for emotional distress does not thereby waive the privilege unless there is also an allegation of "psychological injury which necessitated psychiatric treatment." *Perrin v. S & A Enterprises,* 1999 WL 1327665 (Mass.Super.1999); *Meyers v. Tom Foolery's Inc.,* 10 Mass.L.Rptr. 592 (Mass.Super.1999); *Kippenhan v. Chaulk Services, Inc.,* 2 Mass.L.Rptr. 121 at n. 1 (Mass.Super., 1994); *McCue v. Kraines,* 1 Mass.L.Rptr. 298 (Mass.Super., 1993); *Boremi v. Lechmere, Inc.,* 1993 WL 818581 at n. 3

of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

**4.** Section 129A incorporates the provision explicitly by reference; § 135B contains a subsection (c) which is, for all intents and purposes, identical to c. 233, § 20B.

(Mass.Super.1993). Another way of expressing the same view is that pressing a "garden variety claim of emotional distress" does not waive the privilege but any claim of "mental damage," "psychic damage" or "impairment of mental health" will operate as a waiver. *See, e.g., Jacobs v. Vachon,* 11 Mass.L.Rptr. 307 (Mass.Super.2000).

All of the aforementioned state cases cite the case of *Sabree v. United Broth. of Carpenters and Joiners,* 126 F.R.D. 422, 426 (D.Mass.1989) which stands for the same proposition. Other federal district courts hold to a broader view such that any claim for emotional distress damages opens the door to discovery of information reflecting upon the claimant's mental health, which includes piercing any psychotherapist-patient privilege for information that reasonably would relate to a claimant's emotional well being at the time the damages were alleged to have been incurred. *See, e.g., Santelli v. Electro–Motive,* 188 F.R.D. 306 (N.D.Ill., 1999).

But the federal court in Massachusetts has been uniform in taking the more limited view. In the *Vanderbilt* case, then Chief Judge Tauro ruled that:

> [S]o long as Plaintiff does not call as a witness a person who has provided her with psychotherapy, and does not introduce into evidence the substance of any communication with such a person, the communication between her and her psychotherapist is privileged.

*Vanderbilt,* 174 F.R.D. at 230.

The recent opinion in *Booker v. City of Boston,* 1999 WL 734644 (D.Mass., 1999) reaffirmed the "narrow view" reasoning in *Vanderbilt.* The holding in *Booker* precluded the production of the plaintiffs' psychological and medical records because there was no evidence that the plaintiffs therein intended to make affirmative use of the privileged communications. *Id.*

One of the rationales underlying this body of law is that alleging the garden variety of emotional distress and mental anguish does not require expert testimony while claims involving mental or psychological injury or psychic damage require the expert testimony of a mental health professional. If a plaintiff is offering such an expert, the defense should be entitled to any evidence of treatment which the plaintiff has received for the injury or damage.

I adhere to the "limited" or "narrow" view of waiver because that appears to be the law in Massachusetts. The Defendants have not brought to my attention any Massachusetts case in which a broader doctrine of waiver of the privilege has been applied.

■ The issue then becomes whether the Plaintiffs have pleaded something more than "garden-variety" claims for emotional distress. I find that they have not. First, Plaintiffs' counsel specifically averred at the hearing that the Plaintiffs are not alleging mental injury or psychic damage and will not be calling any expert witnesses on the issue. The allegations of the Complaint, with one exception, comport with the assertion. Such terms as "mental anguish, severe emotional distress, humiliation, personal indignity, emotional pain, anxiety embarrassment, and anxiety"[5] and "severe emotional distress, including physical and mental suffering, shame, humiliation"[6] do not denote the type of psychic or psychological injury which would trigger a waiver. While the term "great bodily harm"[7] would, I view that term as hyperbolic pleading rather than any claim that the Plaintiffs are really alleging a psychic or psychological injury.

In short, if Plaintiffs do not offer the testimony of any mental health professional or expert at trial on the issue and do not seek to introduce the records of treatment at trial and do not introduce any evidence as to the substance of any communications between themselves and mental health professionals, the communications between them and Ms. Bracken and Dr. DeBiase are privileged.

■ Further, the fact that the Plaintiffs bring claims for intentional and negligent infliction of emotional distress does not, in

---

5. *See* page 201, *supra.*

6. *See* page 201, *supra.*

7. *See* page 201, *supra.*

and of itself, operate as a waiver. *Meyers,* 1999 WL 1025364. Nor does the bringing of a claim of loss of consortium, without more, operate as a waiver. *McCue,* 1993 WL 818731.

### C. Waiver by Revealing Substance of Communication

■ Defendants argue that the Plaintiffs have waived the privilege through revealing the substance of the communications. Defendants argue that because the mental health care providers have been identified and have produced, both directly and through Plaintiffs' attorney, the dates and costs of Plaintiffs' treatment sessions, Plaintiffs have waived the privilege protecting the substance of the communications that occurred during those identified treatment sessions. On this issue, Defendants are wrong; a psychotherapist or social worker's identity and dates or costs of treatment are subject to disclosure regardless of the existence of a privilege or subsequent waiver thereof. *See Vanderbilt,* 174 F.R.D. at 230; *see also Santelli,* 188 F.R.D. at 310.

■ Defendants argue also that Plaintiffs have waived any privilege as to counselor Bracken because Walter Sorenson testified at his deposition on 29 February 2000 regarding the substance of the subject matter of the treatment. Specifically, Walter Sorenson testified, without objection, that he and his then fiancé, Sarah Sorenson, sought the assistance of counselor Bracken to help with their relationship. Defendants attach as Exhibit 1 to their Motion to Compel (# 65) five pages of deposition testimony of Walter Sorenson, of which a small portion relates the following:

Q. What was the reason you and Sarah went into counseling?

A. Relationship.

. . .

Q. Were there any issues relating to trust between the two of you?

A. Trust came up as an issue with Sarah.

. . .

Q. And did any part of your counseling involve either one of you expressing concerns about your relationship?

A. I think both of us did.

Although Walter Sorenson's answers come perilously close to the edge, I do not find a waiver. Revealing nothing more than that during a joint counseling session, two persons "expressed concerns" about their relationship is just too general a description of the substance of the communication to operate as a waiver as to all specific communications on the subject matter. Further, it is noted that the Defendants' counsel is questioning Walter Sorenson at this point as part of the discovery process. It is not as if Walter Sorenson were raising the issue in order to bolster his own position. In all the circumstances, a ruling that he waived his privilege by answering the questions as he did would not be appropriate.[8]

### IV. ORDER

Accordingly, it is ORDERED that the Motion to Quash (# 52) be, and the same hereby is, ALLOWED and the Cross–Motion to Compel the Testimony of Hilary P. Bracken and Mary Ellen DeBiase (# 65) be, and the same hereby is, DENIED.

---

**8.** This is not to say that Defendants may not question the Sorensons on issues in their relationship which might have been caused by factors other than the problems with the I.R.S. They may also bring out the fact that the Sorensons received counseling "... even though the communications and records of those communications between the plaintiffs and their therapists are privileged." *Booker,* 1999 WL 734644 at* 2.