Ernesto M. **SANCHEZ, et al., Plaintiffs,**

v.

**U.S. AIRWAYS, INC., Defendant.**

**No. CIV.A. 99–6586.**[1]

United States District Court, E.D. Pennsylvania.

March 29, 2001.

---

1. The parties' submittals to the Court have the wrong Case Number for this action, using the Docket Number for the case in San Juan, Puerto Rico, instead of the Docket Number assigned by this Court. The Court asks that the parties take care when placing the Case Number on documents submitted to the Court, to insure that all papers are correctly docketed and timely received.

Anna M. Durbin, Ardmore, PA, Adalina de Jesus–Morales, Rio Piedras, PR, Charles S. Hey–MaestreSan Juan, PR, for Plaintiffs.

Tom A. Jerman, Valerie Granfield Roush, O'Melveny & Myers, Washington, DC, Vincente J. Antonetti, Goldman, Antonetti & Cordova, San Juan, PR, Barbara Rittinger Rigo, James M. Wilson, Littler Mendelson, Philadelphia, PA, for Defendant.

### MEMORANDUM–ORDER

GREEN, Senior District Judge.

Presently before the Court is Defendant U.S. Airway's Motion to Compel Plaintiffs' production of certain medical records, or, in the Alternative, to Strike Plaintiffs' Claims for Emotional Damages, Plaintiffs' Response, and Defendant's Reply. For the following

reasons, Defendant's motion will be granted, and Plaintiffs will be ordered to either produce the information requested, or have their claims for emotional damages stricken.

## I.  Factual and Procedural Background

Ernesto Sanchez was employed by U.S. Airways ("Defendant") when, in August, 1997, his employment was terminated. *See* **Pltfs.' Am. Complaint** ¶ 14. As a result of his termination, Mr. Sanchez was forced to find new employment, and alleges that he and his wife, Charlotte Caliano de Sanchez, were forced to incur significant costs associated with relocation, in addition to the loss of Mr. Sanchez' income. *See* **Pltfs.' Am. Complaint** ¶¶ 23–24. Mr. Sanchez alleges that his version of the events leading to his firing was ignored, the Defendant unfairly relied on information provided by "white, non-Hispanic employees", and he was unfairly terminated due to improper race discrimination. *See* **Pltfs.' Am. Complaint** ¶¶ 20, 26. Defendant denies Plaintiffs' allegations, and alleges that Mr. Sanchez "was terminated for his improper conduct and behavior as a management employee when he caused a revenue passenger of the airline to give up his seat in exchange for compensation in order to provide [Mr. Sanchez] with a seat on the Puerto Rico bound flight." *See* **Dfdt.'s Answer, Affirmative Defenses** ¶ 5.

Plaintiffs filed the instant action in the United States District Court for the District of Puerto Rico, citing the court's original jurisdiction under 28 U.S.C. § 1331, and seeking damages for the deprivation of rights secured by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to e–17. Plaintiffs also alleged claims for national origin and/or race discrimination in employment in violation of Law 100 of June 30, 1959, 29 P.R.L.A. § 146, *et seq.* ("Law 100"), and associated consortium claims based on Puerto Rican law. On motion of Defendant, the Honorable Jaime Pieras, Jr., Senior United States District Judge, ordered the matter to be transferred to this district, concluding that most of the facts at issue took place in Philadelphia, Pennsylvania, making venue more convenient for discovery and for most of the potential witnesses.

In addition to other damages, both Plaintiffs' contend that they have suffered significant emotional distress related to Mr. Sanchez's termination. *See* **Pltfs.' Am. Complaint** ¶¶ 23, 30. *See also* **Dfdt.'s Mem. of Law,** Exhibit 1 at 6–7 (Pltfs.' Answer to Interrogatories). Particularly, in their Answer to Defendant's Interrogatories, the Plaintiffs divulged that they had received treatment for "mental and emotional distress caused by [Mr. Sanchez's] termination from employment, [their] loss of income and disruptive relocation, all caused by [Mr. Sanchez's] unlawful and discriminatory termination by U.S. Airways." *See* **Dfdt.'s Mem. of Law,** Exhibit 1 at 6.

Because the Plaintiffs had alleged emotional distress, the Defendant attempted to obtain the complete medical file of Joseph Levenstein, Ph.D., the Plaintiffs' psychotherapist. After obtaining and reviewing the psychotherapist's records, Plaintiffs' counsel determined that the record's "relevance to this case was quite limited and that they primarily contained other privileged communications." *See* **Pltfs.' Response** at 5. Counsel also averred that the records "have little or no relevance to this case or to [Plaintiffs'] claim." *See* **Pltfs.' Response** at 6. To remedy any obfuscation occasioned by their earlier answer to Defendant's interrogatories, the Plaintiffs have submitted a "Statement under Penalty of Perjury" with which they wish to replace their earlier answer with a clarified response, downplaying the importance of the disputed records. *See* **Pltfs.' Response** at 5–6.[2]

---

2.  Plaintiffs' original interrogatory response was:

We visited the following psychologist for treatment of the mental and emotional distress caused by my termination from employment, our loss of income and disruptive relocation, all caused by my unlawful and discriminatory termination by U.S. Airways: Dr. Joseph Levenstein, Ph.D.

*See* **Dfdt.'s Mem. of Law,** Exhibit 1 at 6. Plaintiffs' Amended Interrogatory reads:

While the response then provided to the defendants was the best of our recollection, upon further discussion between the two of us and upon reflection, we are now sure that the primary reason for visiting Dr. Levenstein, whom we saw for the first time in early 1999 (approximately 18 months after the job termination by

After several attempts at obtaining these records, Defendant filed the instant motion, asking the Court to compel Plaintiffs' production of their psychotherapy records.[3] *See* **Dfdt.'s Mem. of Law** at 1. Recognizing that the Plaintiffs' may not want to divulge certain personal information which was revealed in their sessions, Defendant asks that, in the alternative to the production of these records, Plaintiffs' claims for emotional distress be stricken. *See* **Dfdt.'s Mem. of Law** at 1. Plaintiffs object to the production of their psychotherapist's records, contending that the records are privileged and mostly irrelevant, and seek a Protective Order to preclude Defendant from delving into Plaintiffs' psychotherapy. *See* **Pltfs.' Response** at 1.

## II. Discussion

■■■ "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). "Under the Federal Rules of Civil Procedure and our jurisprudence, district courts have broad discretion to manage discovery." *Sempier v. Johnson & Higgins,* 45 F.3d 724, 734 (3d Cir.) (citing examples), *cert. denied,* 515 U.S. 1159, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).

The Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the disclosure or discovery not be had." Fed.R.Civ.P. 26(c). Plaintiffs seek such a protective order from the Court, arguing that the records at issue are privileged, and thus not discoverable.

■■■ "All evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501." [4] *Pearson v. Miller,* 211 F.3d 57, 65 (3d Cir. 2000). "In general, federal privileges apply to federal law claims." *Pearson,* 211 F.3d at 65. Both parties agree that federal common law applies to the issue sub judice. *See* **Dfdt.'s Mem. of Law** at 5–9; **Pltfs.' Response** at 3–10. The Supreme Court has held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond,* 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). "Like other testimonial privileges, the patient may of course waive the protection." *Jaffee,* 518 U.S. at 15 n. 14, 116 S.Ct. 1923.

The Plaintiffs posit four responses to Defendant's attempt to obtain the Plaintiffs' records. First, the Plaintiffs present an alternative answer to the interrogatory which caused the instant maelstrom; particularly, the Plaintiffs wish to amend their answer to reflect that the "primary reasons for seeing Dr. Levenstein were personal and unrelated to this case." *See* **Pltfs.' Response** at 6. Second, the Plaintiffs argue that they did "not waive the patient-psychotherapist privilege when they assert[ed] only garden-variety emotional distress." *See* **Pltfs.' Re-**

---

U.S. Airways), was not "attributable to . . . employment with U.S. Airways, or the termination of . . . employment", as asked by the defendant. Rather, the primary reasons for seeing Dr. Levenstein were personal and unrelated to this case. We hereby amend our answer to said interrogatory number 12, accordingly.
*See* **Pltfs.' Response** at 6.

3. Defendant also attempted to question the Plaintiffs about their treatment sessions with their psychotherapist at the depositions of the Plaintiffs. Both Plaintiffs were advised not to answer those questions, and the propriety of their refusal is the subject of a separate motion to this Court.

4. Federal Rule of Evidence 501 provides that:

[T]he privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

sponse at 6. Third, the Plaintiffs assert that they do not intend to call Dr. Levenstein or any expert to testify about the Plaintiffs' emotional distress, and will, instead, rely solely on lay person testimony. *See* **Pltfs.' Response** at 6–7. Finally, the Plaintiffs argue that the records of treatment at issue "have little or no relevance to this case or to [Plaintiffs'] claim." *See* **Pltfs.' Response** at 6.

### A. Relevance

■ Plaintiffs' amended interrogatory answer and averments in their Response undercut their argument that the records at issue are irrelevant to this action. While Plaintiffs attempt to downplay *how* relevant the records are, they essentially concede that the records have *some* relevance. If the records were totally irrelevant, then Plaintiffs' amended interrogatory answer would have said that *all* of the reasons for seeing Dr. Levenstein were unrelated to this case, instead of equivocally stating that the *primary* reason for the treatment was unrelated. *See* **Pltfs.' Response** at 6. Also, Plaintiffs assert that the records "have little or no relevance to this case or to their claim." *See* **Pltfs.' Response** at 6. Again, however, the language Plaintiffs employ concedes that the records may have *some* relevance. It is not for a party to determine, by a unilateral review of documentation, whether information is relevant to the case. At the discovery stage of the litigation, the evidence sought need only be relevant, and "need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed.R.Civ.P. 26(b)(1). Defendant argues that the records are relevant because they may disclose whether Plaintiffs actually suffered emotional distress from Mr. Sanchez's termination, or whether the Plaintiffs sought treatment for unrelated stress, the existence of which would mitigate the Plaintiffs' emotional distress claim against the Defendant. *See* **Dfdt.'s Mem. of Law** at 9–10.

I conclude that the records are relevant to the case, and could lead to the discovery of admissible evidence.

### B. Privilege

■ Though the Plaintiffs' records are relevant, it must be determined to what extent the patient-psychotherapist privilege shields their discovery. While the Supreme Court has stated that the patient-psychotherapist privilege may be waived, neither they nor the Third Circuit have decided with particularity what constitutes waiver. *See, e.g., Jaffee,* 518 U.S. at 15 n. 14, 116 S.Ct. 1923 (stating that, like other privileges, patient may waive it, but not stating what types of waiver suffice). Defendant cites several cases for their proposition that "when a patient places his or her mental or emotional condition into issue in litigation, the privilege is waived, even in cases where there is no indication that the plaintiff intends to name the doctor as a witness." [5] *See* **Dfdt.'s Mem. of Law** at 6. Plaintiff counters with several cases which "hold that the privilege is not waived unless the plaintiff makes affirmative use of the privileged material in connection with her prosecution of the case." *See* **Pltfs.' Response** at 8 (citing *Booker v. City of Boston,* Nos. 97–CV–12534–MEL, 97–CV–12675–MEL, 1999 WL 734644, at *1 (D.Mass. Sept.10, 1999)).[6]

It is clear that a balancing of the interests must be done: the Defendant's interest in obtaining information directly relevant to the claims being made by Plaintiffs, and the

---

5. *See, e.g., Sarko v. Penn–Del Directory Co.,* 170 F.R.D. 127, 130 (E.D.Pa.1997) (holding that "a party waives the privilege by placing her mental condition at issue"); *Topol v. Trustees of the Univ. of Pa.,* 160 F.R.D. 476, 477 (E.D.Pa.1995) ("Having placed her mental state in issue, plaintiff waived any applicable psychotherapist-patient privilege."). *See, also, Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir.2000) (same); *Sidor v. Reno,* No. 95 Civ. 9588(KMW), 1998 WL 164823, at *2–3 (S.D.N.Y. April 7, 1998) (same); *Kerman v. City of New York,* No.

96 CIV. 7865(LMM), 1997 WL 666261, at *3 (S.D.N.Y. Oct.24, 1997) (same); *Alden v. Time Warner, Inc.,* No. 94 CIV. 6109(JFK), 1995 WL 679238, at *2 (S.D.N.Y. Nov.14, 1995) (same).

6. *See, also, Fritsch v. City of Chula Vista,* 187 F.R.D. 614 (S.D.Cal.1999) (holding that party did not waive privilege by putting emotional state in issue); *Hucko v. City of Oak Forest,* 185 F.R.D. 526 (N.D.Ill.1999); *Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225 (D.Mass.1997).

Plaintiffs' privacy interest in shielding personal and potentially irrelevant information. Essentially, however, what the Plaintiffs ask the Court to do is to allow them to make a claim for emotional and mental distress, but disallow the Defendant from discovering information about the myriad causes of their distress. Plaintiffs admit that factors unrelated to this action were involved in their decision to seek psychotherapy. The exact nature of these factors is presently unknown, but, their existence may serve to undercut or extinguish Plaintiffs' claims for emotional distress. If the records show that certain stress factors pre-dated Mr. Sanchez's termination, or that other factors unrelated to this litigation occurred after the termination, then Defendant could show that Plaintiffs' claims are either baseless, overblown or insubstantial.

Plaintiffs argue that Defendant should be permitted to ask *whether* Plaintiffs obtained treatment, and ask Plaintiffs *what* were the causes of the unrelated emotional stress, but that Defendant should not be allowed to read the Plaintiffs' treatment reports, ask the Plaintiffs what was discussed in therapy, or depose Dr. Levenstein. Though it is true that this approach would protect the sanctity of the records, it would allow the Plaintiffs to proceed with a claim on unequal terms. Plaintiffs would be allowed to divulge what they wanted, and to independently assess the quantum of harm caused by Defendant's actions and the other, unrelated stress factors. Though convenient to Plaintiffs, this approach is unsatisfactory to our adversarial system of justice. It would be unfair to allow Plaintiffs to unilaterally determine the amount of harm Defendant caused, without allowing the Defendant or the fact-finder to argue, consider and weigh other relevant factors of emotional stress.

■ To allow Plaintiffs to make a claim for emotional distress, but shield information related to their claim, is similar to shielding other types of medical records. For instance, if the injury at issue were to the knee, and Plaintiff had sustained a subsequent knee injury requiring treatment, Plaintiffs would not be able to hide the details of the subsequent knee injury because of privilege or privacy considerations. In order to allege and recover for a harm, Plaintiffs need to show the existence and extent of the harm.[7] The particular value of the harm is best left to the fact-finder, after a careful view of the facts. The only way to adequately review the facts is to bring to light relevant information.

Therefore, I conclude that Plaintiffs have waived the patient-psychotherapist by putting their emotional state at issue. Balancing the interests present, and considering the goals of our adversarial system, it is clear that Defendant's interest in defending Plaintiffs' claim must outweigh Plaintiffs' privacy interest in these records. Of course, Plaintiffs should be given the opportunity to prevent the disclosure of this information by withdrawing their claims for emotional distress.

### III. Conclusion

For the foregoing reasons, Defendant's motion will be granted, and Plaintiffs will be ordered to either produce the psychotherapy records for the Plaintiffs' treatment with Dr. Levenstein, or have their claims for emotional and mental distress be stricken. Also,

---

**7.** Plaintiffs' argue that it "is well-settled that plaintiffs may testify about their mental or emotional damages without having to resort to any expert testimony by mental health professional." *See* **Pltfs.' Response** at 7. Plaintiffs' argument, while true, misses the point. It is clear that Plaintiffs may establish their damages with lay or expert testimony. The issue, however, is not how the Plaintiffs intend to prove their emotional damages, but, rather, the Defendant's right to defend against the Plaintiffs' claims. How the Plaintiffs decide to prosecute their claims is a tactical decision for them alone. But, the determination of relevant evidence is outside their purview. All of the cases cited by Plaintiffs stand for the proposition that a claim for emotional damages can be sustained without the necessity of expert testimony, but none of the cases stands for the proposition that the Defendant's actions need be reciprocal. That is, just because Plaintiffs' do not choose to use an expert does not mean that Defendant cannot use an expert to discredit Plaintiffs' claim. Further, none of the cases stated at this point in Plaintiffs' Response stand for the idea that just because Plaintiffs do not intend to use expert testimony, the records related to their use of a mental health professional is inviolable.

Plaintiffs' motion for a protective order will be denied. An appropriate order follows.