Turhan JESSAMY, Torre Jessamy, an infant by his mother and natural guardian Tracy Foster and Tracy Foster individually, Turhanna Jessamy, an infant by her mother and natural guardian Tracy Foster and Tracy Foster individually, Thomas L. Jessamy, Thomas A. Jessamy, an infant by his father and natural guardian Thomas L. Jessamy and Thomas L. Jessamy individually, Mayritta Jessamy, and Queen Anne Charles, Plaintiffs,

v.

Corrections Officer ("C.O.") Sgt. Fred EHREN Badge # 567, Sgt. Stephen Carley Badge # 83, C.O. David Dejoseph, C.O. Sewell, C.O. Coleman, C.O. Costello Badge # 833, Captain Chancer, C.O. Mark Reimer, Sgt. Laurie Carman, Captain Goff, Sgt. Sheridan Reynolds, Sgt. Silas Gilliam, C.O. Garcia (First Names Unknown), John Doe and Richard Roe, Corrections Officers of the County of Westchester, The Identity and Number of Whom is Presently Unknown to Plaintiffs, All In Their Individual Capacity as Corrections Officers for the County of Westchester, Warden Joseph Miranda, in his individual and official capacity, County Corrections Commissioner Joseph Stancari, in his individual and

Monica Studdert Eskin, Tarrytown, NY, for Plaintiffs.

Bruce A. Jackson, Jackson & Consumano, New York City, Stuart A. Kahan, Oxman, Tulis, Kirkpatrick, Whyatt & Geiger, L.L.P., White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO LIMIT PLAINTIFFS' RECOVERY TO NOMINAL DAMAGES

McMAHON, District Judge.

Plaintiffs in this Section 1983 action sue various Corrections Officers at the Westchester County Jail ("the Jail") for a variety of alleged offenses.[1] Turhan and Thomas Jessamy, pretrial detainees at the Jail, allege that on July 27, 1997, they were "punched, kicked, stomped upon, dragged and otherwise physically abused" while handcuffed. This alleged incident occurred while Turhan and Thomas Jessamy were visiting with their families, the remaining plaintiffs in this action, in the Jail's visiting area. They also claim that they were falsely accused of assault in a felony complaint sworn out by a Westchester County detective. In addition, plaintiff Mayritta Jessamy—one of the visiting relatives—alleges that a Corrections Officer hit her and "grabbed her by the body." The remaining plaintiffs, all relatives of Turhan and Thomas Jessamy, allege that they were knocked into or pushed by guards.

In or about December, 1999 defendants demanded psychiatric examinations of four of the plaintiffs who had alleged that they suffered "psychiatric injuries" resulting from the incident in question. Although the term "psychiatric injury" appears nowhere in plaintiffs' complaint, plaintiffs alleged that they suffered the following injuries which required medical treatment: extreme fear, pain and suffering, emotional trauma, emotional distress. (Compl.¶ 21(d).) However, prior to December 1999, plaintiffs had not designated any medical or psychiatric experts to testify at the trial of this action, and only one plaintiff—Turhan Jessamy—actually had appeared for a psychiatric exam. On April 26, 2000, counsel for plaintiffs, David J. Eskin, wrote the following letter to his opponent, who at the time was Vito J. Ferrante, Esq.:

> Plaintiffs will withdraw with prejudice any and all claims of physical injuries and psychiatric injuries with respect to the events which are the subject of this litigation.

(Ferrante Certif. at Ex. E.) According to the records of this Court, this letter represents the parties' first use of the term "psychiatric injury."

Shortly thereafter, Mr. Ferrante moved *in limine* to preclude plaintiffs from introducing any evidence of physical or psychological injuries. (Ferrante Certif.)

Subsequently, Westchester County ("the County") retained the law firm of Oxman, Tulis, Kirkpatrick, Whyatt & Geiger, LLP, to represent it at the trial of this action. Defendants' new counsel made a different *in limine* motion: (1) to limit plaintiffs' recovery to nominal damages if they were to prevail on liability; and (2) to dismiss the pendent State law claims, all of which sound in tort, on the ground that no tort claim lies where no damages can be

---

1. Because the parties stipulated that the County of Westchester (the "County") was the only defendant properly served by plaintiffs, the County is the only defendant in this case. (Tr. of Final Pre–Trial Conf. at 6–8.)

proved. The gravamen of the new motion was that the plaintiffs had withdrawn their damages claims with prejudice, so no damages could be proven. In a conference before this Court on March 2, 2001, defendants conceded that their earlier motion (made by prior counsel) to preclude plaintiff from introducing evidence of physical or psychological injures was rendered moot by their subsequent *in limine* motion. (Tr. of Final Pre–Trial Conf. at 8–9.)

In opposition to the new motion, plaintiffs' counsel, the author of the April 26, 2000 letter, contends that, while the parties "stipulated"[2] that plaintiff would not offer expert testimony about physical or psychological injuries (allegedly in order to forestall unnecessary motion practice), it was not plaintiffs' intention to withdraw their claims entirely, and that testimony by plaintiffs concerning their own "pain and suffering" could still be offered at trial. Plaintiffs claim to be seeking damages for emotional distress, rather than for physical and/or psychological injury. While the briefs are not explicit, it appears to be plaintiffs' contention that the April 26, 2000 letter does not withdraw claims for emotional distress damages resulting from the defendants' alleged violation of the plaintiffs' constitutional rights.

■ Critical to the determination of this motion (and countless others that are made during the course of similar tort trials) is whether the phrase "psychiatric injuries" is broad enough to encompass a claim of emotional distress, or whether it is more limited. Under New York law, courts frequently use the term "psychiatric

injury" (as well as "psychological injury") to refer to medical conditions such as depression and post-traumatic stress disorder ("PTSD"). *See, e.g., Carrier Corp. v. New York State Div. of Human Rights,* 224 A.D.2d 936, 637 N.Y.S.2d 877 (1996); *Kessler v. Fairmont Theater Inc.,* 262 A.D.2d 888, 692 N.Y.S.2d 500 (1999). However, when determining emotional distress *damages,* many courts distinguish between psychiatric injuries, such as PTSD, and "garden-variety" claims of emotional distress.

■ Claims of emotional distress that are "garden variety" are "simple or usual." *Ruhlmann v. Ulster County Dept. of Social Services,* 194 F.R.D. 445, 449 n. 6 (N.D.N.Y.2000). However, claims of emotional distress which are not "garden variety" include complex claims which "result[ ] in a specific psychiatric disorder." *Id.* Generally, the distinction hinges on whether or not the claimed injury requires medical attention. Emotional distress damages claims which do not require medical attention have been characterized as "garden variety." *See Epstein v. Kalvin–Miller Intern., Inc.,* 139 F.Supp.2d 469, 481 (S.D.N.Y.2001) (defining garden variety emotional distress claims as those which do not require medical treatment).

■ Courts following New York law distinguish between psychiatric injuries and "garden variety" emotional distress claims when determining whether a jury award of compensatory damages is excessive. *See, e.g., Shannon v. Fireman's Fund Ins. Co.,* 156 F.Supp.2d 279, 297 (S.D.N.Y.2001)

**2.** In his certification opposing this motion, Mr. Eskin contends that the April 26 letter (which he persists in calling a stipulation) was "based upon the fact that a defense motion was pending before the Court seeking to preclude plaintiffs from offering evidence of their physical or psychiatric condition at the time of trial." (Eskin Cert. ¶ 5.) However, the cer-

tification from Mr. Ferrante is dated some two weeks after the April 26 letter was sent, and is expressly predicated on the withdrawal of plaintiffs' damages claims. The records of this Court indicate that the motion to which Mr. Eskin refers was in fact made on May 11, 2000.

(noting several instances in which courts have remitted excessive jury verdicts for garden variety emotional distress claims). In addition, courts have distinguished between claims of psychiatric injury and emotional distress when determining whether or not the privilege between a psychotherapist and a plaintiff-patient is waived by plaintiff's assertion of an emotional distress claim. *See Bridges v. Eastman Kodak*, 850 F.Supp. 216, 222 (S.D.N.Y.1994); *Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D.N.J.2000); *Sorenson v. H & R Block, Inc.*, 197 F.R.D. 199, 203–4 (D.Mass.2000). Although these cases are factually dissimilar to the instant case, I find that the distinction between psychiatric injury and "garden variety" emotional distress enunciated in these cases useful to my determination of the defendants' motion.

■ Adhering to this distinction, I conclude that plaintiffs, in their April 26, 2000 letter, waived any and all claims that they developed some sort of psychiatric condition that required medical treatment as a result of defendants' actions. Plaintiffs alleged in their complaint that they experienced "pain and suffering, extreme fear, emotional trauma, emotional distress, requiring the need for medical treatment and further medical treatment." (Compl.¶ 21(d) .) Because medical treatment is necessary, these alleged injuries constitute "psychiatric injuries" rather than "garden variety" claims of emotional distress, and thus were abandoned by plaintiffs on April 26, 2000.

■ However, plaintiffs also allege that they experienced humiliation, embarrassment and injury to reputation, injuries which did not require medical treatment. (Compl.¶ 21(e).) These injuries fall under the broader heading of emotional distress, and are properly categorized as "garden variety" claims because they require no medical examination. Accordingly, I find that plaintiffs did not abandon these claims in their April 26, 2000 letter to defendants. Thus, plaintiffs other than Turhan Jessamy are not limited to nominal damages for their humiliation, embarrassment, and injury to reputation, should they prove defendants' liability at trial.

■ As for Turhan Jessamy, and perhaps Thomas Jessamy, the rules are different. Surprisingly, defendants failed to raise 42 U.S.C.A. § 1997e(e), a provision of the Prison Litigation Reform Act of 1995 ("PLRA"), in their moving papers. Section 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Under § 1997e(e), courts may award nominal damages where a constitutional right had been violated, but where a plaintiff alleges injuries of mental distress or anguish without a prior allegation of physical injury. *See Dawes v. Walker*, 239 F.3d 489, 496–97 (2d Cir.2001); *Rivera v. Wohlrab*, No. CIV.A.99–9881, 2000 WL 1300403, at *1 (S.D.N.Y. Sept.14, 2000); *Waters v. Andrews*, No. CIV.A.97–407, 2000 WL 1611126, at *7 (W.D.N.Y. Oct.16, 2000). The PLRA may be raised *sua sponte* by a court in order to dismiss actions in which plaintiffs claim emotional distress damages without accompanying physical injury. *See Johnson v.C. Gummerson*, 1999 WL 1212483, *1, 201 F.3d 431 (2d Cir.1999); *Brazeau v. Travis*, No. 96–96–CV–0783, 1996 WL 391701, at *1 (N.D.N.Y. July 9, 1996).

■ Under the PLRA, a prisoner is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent

for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C.A. § 1997e(h) (1994 ed.). The PLRA is applicable to plaintiff Turhan Jessamy, a pretrial detainee at the time of the alleged incident who was incarcerated when he filed suit. Turhan Jessamy claims that he experienced emotional distress as a result of the allegedly excessive force used by Corrections Officers at the Westchester County Jail. However, plaintiff has "stipulated" that he will offer no evidence of physical injury at trial. Thus, under § 1997e(e), Turhan Jessamy cannot recover compensatory damages. Plaintiff may still recover nominal damages for the alleged violation of his constitutional rights.[3]

It is not clear from the record whether Thomas Jessamy, who was a pretrial detainee on the day of the alleged incident, was still incarcerated at the time suit was filed. If he was not, he would not be considered a "prisoner" within the meaning of the PLRA. *See Greig v. Goord,* 169 F.3d 165, 167 (2d Cir.1999). Counsel should supply this information on the first day of trial.

### CONCLUSION

Defendants' motion to limit plaintiffs to nominal damages is granted for plaintiff Turhan Jessamy and denied for the remaining plaintiffs. However, the remaining plaintiffs may not seek damages for their psychiatric injuries, which include their pain and suffering, fear, and emotional trauma.

---

**3.** In cases brought under 42 U.S.C. § 1983, "a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury." *Amato v. City of Saratoga Springs, N.Y.,* 170 F.3d 311, 317 (2d Cir.1999). However, plaintiffs

This constitutes the decision and order of this Court.

may not recover punitive damages from the County of Westchester. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that punitive damages are not recoverable against municipalities in actions brought pursuant to 42 U.S.C. § 1983).