Agnes, A. J.
This is an automobile tort case in which the plaintiff claims that on July 2, 1998, while operating her motor vehicle and stopped at a red light, she was struck from the rear and injured by a motor vehicle being operated by the defendant, Henry Prussman. The defendant maintains that he is entitled to access to records of the plaintiff s psychiatrist because the plaintiff has introduced her mental or emotional condition as an element of her claim, and “it is more important to the interests of justice that their communication be disclosed than that the relationship between patient and psychotherapist be protected.” See G.L.c. 233, §20B(c). For the reasons that follow, the plaintiffs motion is DENIED.
BACKGROUND
The plaintiff describes her injuries in the Joint Pretrial Memorandum (hereafter, “Joint Pretrial”), as follows:
[T]he plaintiff has suffered disabling headaches and a disfunction of her temporomandibular joint. The plaintiff has undergone an intense and lengthy course of medical treatment primarily managed by neurologist, Mazen Eneyni, M.D. of the Faulkner Hospital Headache Clinic and oral surgeon, Allen W. Tauro, M.D. Treatment has included long-term narcotic management, multiple nerve blocks, multiple botox injections, the use of mouth orthotics and physical therapy.
Joint Pretrial at B(l). The plaintiff claims that she has been unable to work since the accident, even on a part-time basis, because of the pain she continues to experience, debilitating headaches, and inability to remember. Plaintiffs Motion, exhibit 1 & 2. In October 1999, the parties agreed to defer the issue whether records of the plaintiffs psychiatrist should be produced. It was reported at that time that the psychiatrist treating the plaintiff expressed his “strong view” that the success of his counseling is dependent on the plaintiffs understanding that her conversations with him will remain confidential. Defendant’s Motion, exhibit 14; Plaintiffs Opposition, exhibit 2 (letter from attorney Delaney, counsel for the plaintiff, to attorney Enright, counsel for the defendant).
The defendant argues that the record is replete with evidence that suggests, if not compels, the inference that there is a mental health or emotional component to the plaintiffs condition which she says was brought about by the negligence of the defendant. Although the plaintiff has complained of chronic pain as noted above, certain diagnostic tests have been negative for any abnormality in her brain or spine. Plaintiffs Motion, exhibits 9. 10, and 11. Also, there is evidence in the form of notes by Dr. Hockman, an orthopedic surgeon who treated the plaintiff in July and August 1998 that MRI scans of her neck and low back were normal and that his objective findings did not support her subjective complaints. Plaintiffs motion, exhibits 3 & 4. According to Dr. Mark Biletch, a neurologist who examined her in October 1998, “her headaches are most likely multifactorial, related to [a variety of causes] and probably an element of tension-type headache . . . she is under considerable stress, has a history of prior depression, and has had worsening to the point of voicing suicidal ideation. These preexisting issues have likely impacted on her self-image and she seems emotionally very fragile, wherein this may impede her recovery ... I have suggested that she resume a therapeutic counseling relationship . . .” Plaintiffs Motion, exhibit 5. According to Kathleen Leahy, D.O., a physical therapist who treated the plaintiff in 1998, ”[t]here does seem to be a stress component to the plaintiffs symptoms.” Plaintiffs motion, exhibit 6. And, finally, according to Dr. Roberto Feliz, “there is definitely an emotional component associated with this ongoing chronic headache and ideally I believe that if we are to help this patient better manage her pain, she also needs to have some psychological intervention that will hopefully allow this patient to developing (sic) a coping mechanism as to how to deal with this ongoing condition.” Plaintiffs motion, exhibit 8.
On or about October 7, 1999, defendant issued a subpoena for the records of Dr. Albert Brenner, the plaintiffs psychiatrist. Plaintiffs motion, exhibit 12. Counsel for the plaintiff replied by indicating that Dr. Brenner was providing the plaintiff with counseling services “relative to a rape which occurred in 1993.” The parties agreed to defer resolution of the issue to a later date. Plaintiffs motion, exhibit 14. Thereafter, the plaintiff submitted to a deposition. In her deposition, plaintiff stated that she had been sexually assaulted both as a child and as an adult. Plaintiffs motion, exhibit 13 at 78-79. However, she stated that she was not treating with Dr. Brenner with regard to these sexual assaults, but rather began to see him after the motor vehicle accident that is the subject of this case. Plaintiffs motion, exhibit 13 at 78, 80. In fact, plaintiff stated that she would not be treating with Dr. Brenner if she had not been involved in the motor vehicle accident on July 2, 1998. Plaintiffs motion, exhibit 13 at 86-87. Also, plaintiff explained that the issues that she was discussing with Dr. Brenner had arisen as a *67 result of the accident and related to the quality of her personal life.[1]
The plaintiff in opposition points out that she is not seeking compensation for emotional harm, plaintiffs opposition at 2, but rather is “seeking compensation for personal injury sustained as a result of the July 2, 1998 motor vehicle accident and the effect those injuries have had on her day to day activities.” Plaintiffs opposition, exhibit 2 (letter from attorney Delaney to attorney Enright dated October 19, 1999). The plaintiff has not listed Dr. Brenner or any other psychologist or psychiatrist on her witness list for trial.
DISCUSSION
A. Whether the Plaintiffs Mental or Emotional Condition is an Element of Her Claim
There is no dispute in this case that the plaintiff qualifies as a “patient,” that Dr. Brenner qualifies as a “psychotherapist,” that the statements made by the plaintiff to Dr. Brenner and any notes or records of his treatment of the plaintiff qualify as “communications,” and that such communications were “relative to the diagnosis and treatment of the patient’s mental or emotional condition” as those terms and phrases are used and defined in G.L.c. 233, §20B. Under the statute, the plaintiff, as the patient, has a qualified privilege to refuse to disclose and to prevent any witness from disclosing such communications subject to six enumerated exceptions. G.L.c. 233, §20B(a)-(f). The exception relevant to this case and upon which the defendant relies provides that the privilege shall not apply:
In any proceeding, except one involving child custody, adoption, or adoption consent, in which the patient introduces his mental or emotional condition as an element of his claim or defense, and the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.
G.L.c. 233, §20B(c), as amended by St. 1987, c. 398, §2.
The first issue that must be faced is whether the plaintiff has introduced her mental or emotional condition as an element of her claim. An essential element of the plaintiffs claim that the defendant acted negligently in colliding with her vehicle is that he caused her to suffer damages. “Although there has been negligence in the performance of a legal duty, yet it is only those who have suffered damage therefrom that may maintain an action therefor.” Sullivan v. Old Colony Railway, 200 Mass. 303, 308 (1908). For example, the standard jury instruction for use in negligence cases reads as follows:
The fourth element the plaintiff must prove is damages. You will only reach the issue of damages if you find that the defendant was negligent and that the defendant’s negligence caused injury to the plaintiff. As with all the other elements, the plaintiff bears the burden of proving [his/her] damages by a fair preponderance of the evidence. The purpose of the law in awarding damages is to compensate an injured person for the losses incurred because of another’s negligent conduct.
Massachusetts Superior Court Civil Practice Jury Instructions §2.1.13 Damages (Brady, Butler, & Mirick eds. Vol. 1, MCLE 1998 ed.).
The measure of damages in such a case encompasses the losses that flow directly from the injury. “A plaintiff who has suffered physical injury through the fault of a defendant is entitled to recover for pain and suffering: for reasonable expenses incurred by him for medical care and nursing in the treatment and care of his injury; for diminution in his earning power; and for such pain and suffering and such expenses and diminution of earning capacity as are shown to be reasonably probable to continue in the future. The measure of damages is fair compensation for the injury sustained.” Rodgers v. Boynton, 315 Mass. 279, 280 (1943). This definition includes recovery for both physical pain and suffering as well as mental and emotional pain and suffering. Barney v. Magenis, 241 Mass. 268, 273 (1922). See Nolan & Sartorio, Tort Law §243 (37 Mass. Prac. 2d ed. 1989). See also Freyermuth v. Luffy, 376 Mass. 612 (1978) (in a wrongful death action in which the decedent, the driver of a motor vehicle, suffered a head injury as a result of being struck by an automobile operated by the defendant, then experienced a recurrence of a preexisting mental illness and ultimately committed suicide, recovery was permitted for conscious physical, mental and emotional pain and suffering). Again, the standard jury instructions for civil cases are instructive. With regard to “pain and suffering" the standard instruction reads as follows:
The first area is pain and suffering. Pain and suffering are of two types: physical pain and suffering, and mental pain and suffering. For physical pain and suffering, you are to consider the areas of the body in which you find the plaintiff physically injured. You are to take into account the past pain and suffering endured by the plaintiff since the date of the injuries, the present pain and suffering caused by the injuries and any future pain and suffering which were proved with reasonable medical probability. Mental pain and suffering includes any and all nervous shock, anxiety, embarrassment or mental anguish resulting from the injury. Also, you should take into account past, present and probable future mental suffering. Taking into consideration the nature of the injury, you are to determine what would be a fair and reasonable figure to compensate the plaintiff. You may consider the extent to which the plaintiffs injuries have caused [him/her] a loss of pleasures which [he/she] otherwise probably would have had in the form of *68 work or play or family life or whatever. The plaintiff is entitled to full compensation for any reduction m the enjoyment of life which you conclude has resulted or probably will result from this accident.
Superior Court Civil Jury Instructions, supra, §2.1.13.
The question becomes whether a plaintiff who alleges a physical injury accompanied by severe pain and suffering including persistent headaches, loss of memory and ability to concentrate, which have resulted in her inability to function well enough to return to work, has introduced her mental or emotional condition as an element of her claim in this negligence action. Although, as noted above, recovery for emotional suffering and mental anguish are available in every tort action in Massachusetts, the claim by the plaintiff in this case makes the mental and emotional harm she has suffered a central and not an incidental aspect of her damages. Furthermore, although the plaintiff maintains that she seeks recovery only for a physical injury, the question is not what label a party assigns to her claim, but rather what is the nature of her injury and the damages that allegedly resulted from it based on a consideration of all the circumstances. Even though the plaintiff has decided not to call a psychiatrist, psychologist or other mental health professional as a witness at this point in time, she has nonetheless alleged a mental impairment (inability to remember and to function well enough to return to work) and assigned it as a central element of her claim. Thus, she has introduced her “mental or emotional condition as an element” of her claim. See G.L.c. 233, §20B(c). Contrast, Sabree v. United Bhd. Of Carpenters and Joiners, 126 F.R.D. 422, 426 (D.Mass. 1989) (distinguishing between “garden variety” tort claim in which damages involve emotional distress and injured party is not deemed to have introduced her mental condition, and a tort claim involving a psychic injury or a psychiatric disorder). Compare Higgins v. Reslow, 5 Mass. L. Rptr. 315, 1996 WL 1185128 *2 (Mass. Superior Court) (5/2/96) (Houston, J.) (“to determine the relevance of privileged mental health communications and documents, common claims of emotional distress associated with other tort claims, are distinguished from claims of severe psychological injury”).
B. Whether the Interest in Disclosure Outweighs the Interest in Confidentiality
The second issue that must be faced in considering whether to compel disclosure despite the assertion of the privilege is whether “it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected." G.L.c. 233, §20B(c). One approach is simply to follow the protocol developed in Commonwealth v. Bishop, 416 Mass. 169 (1993), and refined in Commonwealth v. Fuller, 423 Mass. 216 (1996), for resolving discovery requests of privileged material by defendants in criminal cases. Compare Perrin v. S&A Enterprises, Inc., 9 Mass. L. Rptr. 619. 1999 WL 1327665 (Mass. Superior. Court) (2/16/99) (Hillman, J.) (applying the Bishop protocol to the question of a defendant's access under G.L.c. 233, §20B(c) to the plaintiffs psychological records in a automobile tort case involving a closed head injury— “This court sees no reason why the procedural safeguards should be any less in a civil case. A defendant’s needs for protection of relevant records pertaining to a plaintiffs psychological condition is, if any, greater in a criminal case where the defendant’s freedom and reputation may be at stake, than in a civil case where money damages alone may be involved”); Kippenhan v. Chaulk Services, Inc., 2 Mass. L. Rptr. 121, 1994 WL 879628 (Mass. Superior Court) (4/27/94) (Fremont-Smith, J.) (same approach). But see Jacobs v. Vachon, 11 Mass. L. Rptr. 307, 2000 WL 281665 *2 (Mass. Superior Court 1/28/2000) (Hamlin, J.) (disclosure of privileged records ordered pursuant to G.L.c. 233, §20B without following the Bishop/Fuller protocol).
The Bishop/Fuller protocol requires a showing that the party seeking access to privileged material must wait until the end of the discovery process and establish that the material is not available elsewhere. Furthermore, the party seeking access must demonstrate “a good faith, specific and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant’s guilt. By ‘material evidence’ we mean evidence which is not only likely to meet criteria of admissibility, but which also tends to create a reasonable doubt that might not otherwise exist.” Fuller, 423 Mass, at 226.
The Bishop/Fuller protocol cannot simply be substituted for the statutory test adopted for use in civil cases under G.L.c. 233, §20B(c). There is a difference between the constitutionally based claim of a criminal defendant for access to privileged material in circumstances in which the statute does not provide for disclosure, and the claim of a party in a civil case in circumstances in which the legislature has recognized a number of exceptions to the confidentiality of patient-psychotherapist records. While Fuller demands more of the defendant seeking access to privileged material than did Bishop, see Fuller, supra, 423 Mass, at 225, both tests are variants on the concept of relevancy. In other words, under both Bishop and Fuller, a criminal defendant will obtain access to privileged material in most cases based on a showing of need. This is not the approach taken by the legislature in G.L.c. 233, §20B(c). Presumably, whenever a patient makes his or her mental or emotional condition an element of a claim or defense, and the information contained in the privileged records is not otherwise available, the party seeking access will be able to demonstrate a need for it. Yet, under the statutory exception, the court must go on to determine whether the “interests of justice” require disclosure by considering the value or importance of a party’s access to records along with the patient’s interest in protecting *69 his or her relationship with the psychotherapist, G.L.c. 233, §20B(c). This requires the court to consider more than simply whether the information is relevant or even highly relevant to the patient’s claim or defense. While the patient’s interest in maintaining the confidentiality of privileged communications was a factor considered by the Supreme Judicial Court in fashioning the Bishop/Fuller protocol, it was not identified as a specific interest to be weighed by trial judges in determining whether disclosure should be ordered. Nor are trial judges invited or permitted to consider the “interests of justice” in determining motions for disclosure of privileged material under the Bishop/Fuller protocol. However, the recognition in Fuller and other subsequent cases, see, e.g., Commonwealth v. Pare, 427 Mass. 427, 429-30 & n.4 (1998), that a showing of mere relevancy should not trigger disclosure of otherwise confidential communications is important in approaching the task of interpreting and applying the exception contained in G.L.c. 233, §20B(c).
In order to understand this legislative exception it is useful to review development of the patient-psychotherapist privilege at the federal level. In Jaffee v. Redmond, 518 U.S. 1, 18 & n.19 (1996), the United States Supreme Court recognized the existence of a patient-psychotherapist privilege under Fed.R.Evid. 501, acknowledging that there are situations in which the privilege must give way (“for example, if a serious threat of harm to the patient or others can be averted only by means of disclosure by the therapist”), but rejected the use of a simple balancing test to determine its applicability by weighing the patient’s interest in privacy against the need for disclosure. In Jaffe, the Court observed that in view of the importance of mental health treatment and of confidentiality in the patient therapist relationship, there were strong public policy reasons for recognizing such a privilege,[2] especially because “all fifty states and the District of Columbia have enacted into law some form of psychotherapist privilege.” Id. at 12.[3]
Since the decision in Jaffe, federal courts have reached differing conclusions about the circumstances in which disclosure of privileged material should be ordered. See In re Grand Jury Proceedings, 183 F.3d 71 (1999) (patient-psychotherapist privilege does not apply to communications made in furtherance of a crime or fraud); Vanderbilt v. Town of Chilmark, 174 F.R.D. 225 (D.Mass. 1997) (privilege is waived only when the patient-party uses the privileged communication in support of a claim or defense); Vasconcellos v. Cybex International, Inc., 962 F.Sup. 701 (D.Md. 1997) (patient waives the privilege simply by putting his or her mental condition in issue); Sarko v. Penn-Del Directory Company, 170 F.R.D. 127 (1997) (patient waives the privilege simply by putting his or her mental condition in issue); Doolittle v. Ruffo, 1997 WL 151799 (N.D.N.Y. 1997) (same as Sarko, supra); Sidor v. Reno, 1998 WL 164823 (S.D.N.Y. 1998) (same as Sarko, supra; result not affected by the fact that patient does not intend to offer any expert testimony). While cases dealing with the federal privilege are not directly relevant to the issue presented in this case because the federal privilege does not include a specific exception such as that contained in G.L.c. 233, §20B(c), they are useful in understanding what the legislature intended by the “interests of justice” standard.
For example, Vanderbilt, supra is helpful insofar as the Massachusetts exception, by its own terms, requires that the party who seeks access to privileged material demonstrate more than that the patient has made her mental or emotional condition an element of a claim or defense. In Vanderbilt, supra, the court pointed out that in Jaffee the Supreme Court specifically eschewed a balancing test to determine when a party should be given access to privileged communication, and declined to recognize an exception to the confidentiality of a patient’s communications with a psychotherapist simply based on the fact that the communication may be relevant to a claim or defense. In Vanderbilt, supra, the court followed the example of the Supreme Court in Jaffee, by analogizing the patient-psychotherapist privilege to the attorney-client privilege. Vanderbilt, supra, 174 F.R.D. at 229. The Court concluded that if the communication between patient and psychotherapist is introduced by the patient a waiver should be found. On the other hand, “(t]he act of seeking damages for emotional distress is analogous to seeking attorneys fees. The fact that a privileged communication has taken place may be relevant. But, the fact that a communication has taken place does not necessarily put its content at issue.” Id. Finally, in Vanderbilt, supra, the court considered the fairness of various approaches to the question of waiver of the patient-psychotherapist privilege, a factor that is analogous to the “interests of justice” which appears in G.L.c. 233, §20B(c). Here again, Chief Justice Tauro disagreed with those courts which found waiver based solely the fact that a patient has introduced his or her mental or emotional condition as an element in the case. “Plaintiff, here, is not using the privileged communication as a sword. Were she to introduce evidence regarding the substance of her conversations with her psychotherapist in order to further her claim of emotional damage, this court would agree that she could not shield the communication from others. She has, however, done no such thing.” Id. at 230.
Taking into consideration the specific terms of the exception contained in G.L.c. 233, §20B(c), the recognition given to the value of the patient-psychotherapist privilege in Massachusetts cases, the reasoning of the United States Supreme Court in Jaffee and of the federal district court in Vanderbilt, I conclude that in a case in which a patient introduces his or her mental or emotional condition as an element of a claim or
*70 defense, disclosure of communications between patient and psychotherapist under G.L.c. 233, §20B(c) should not be ordered unless (1) the patient calls the psychotherapist as a witness or introduces evidence of the communication through her own testimony or otherwise, or (2) the party seeking access to the communication makes a specific showing[4] that the truth-seeking function of the trial will be seriously impaired unless a disclosure of the communication is ordered. If the conditions for disclosure are satisfied[5] and disclosure is ordered, the court has the authority to “make any order which justice requires to protect a party or person from . . . embarrassment. . .” Mass.R.Civ.P. 26(c).[6]
In the present case, the plaintiff has introduced her mental or emotional condition as an element of her claim. However, she does not intend to call her psychotherapist nor to offer the substance of any conversations with him in support of her claim. Her psychotherapist has expressed the view that a disclosure would impede the effectiveness of the therapy she is undergoing. The defendant, in seeking access to privileged material, asserts that records of communications between plaintiff and her psychotherapist are likely to yield relevant information about the plaintiff s claim. While that may be true, the plaintiff has failed to demonstrate “that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.” G.L.c. 233, §20B(c).
ORDER
For the above reasons, the defendant’s motion to compel production of the medical records of Dr. Brenner with respect to his treatment of the plaintiff from July 2, 1998 to the present, including communications between the plaintiff and Dr. Brenner that are subject to the privilege set forth in G.L.c. 233, §20B, is DENIED. Should the plaintiffs position change in any material respect, the defendant should be permitted to reapply for relief.

 When asked about the subject of her discussions with Dr. Brenner, plaintiff replied that she was dealing with “loss of my freedom, loss of friends, loss of my boyfriend, not being able to plan my life, just dealing with, you know, time upon time trying one thing, feeling like a guinea pig, being poked, prodded, tested, shot, having things not work, feeling used by some of my providers. I’m looking at the Family Physical Therapy, they sold me everything they could. I think it was horrible they took advantage of someone.” Plaintiffs Motion, exhibit 13 at 87.

The Supreme Court observed that “[t]he mental health of our citizenry, no less than its physical health is a public good of transcendent importance,” and emphasized that “the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.” Id., 518 U.S. at 10-12.

In Jajjee the court also noted that “(Hike other testimonial privileges the patient may of course waive the protection.” Id. at 15 n. 14. However, the Supreme Court specifically avoided a construction of the privilege that admitted of an exception that would invite trial judges to balance the patient’s interest in privacy against a party’s interest in disclosure. Id. at 17-18. In this respect, the federal privilege differs from the Massachusetts privilege which admits of a number of exceptions and specifically requires trial judges to engage in a balancing of interests. See G.L.c. 233, §20B(c).

Here, the observation by the Supreme Judicial Court in Fuller is instructive. The obligation of the party seeking disclosure for this reason is to demonstrate "a good faith, specific, and reasonable basis for believing that the records" contain such information. 423 Mass, at 226. And the examples cited in Fuller (information showing that a patient has a bias toward the party seeking access, has previously fabricated a similar claim, or has difficulty distinguishing reality from fantasy) also are instructive in determining the circumstances in which disclosure should be ordered to preserve the truth-seeking function of the trial. 423 Mass, at 226.

The burden of establishing that the conditions for disclosure are satisfied rests with the party who seeks access to the privileged material. See Cabrera v. Cabrera, 23 Conn.App. 330, 339, 580 A.2d 1227, 1233 (1990).

There is nothing in G.L.c. 233, §20B(c) that directs or suggests that the court should conduct an in camera review of privileged material before ordering that it be disclosed to a party. Although an in camera review is now a feature of stage three of the Bishop protocol, see Commonwealth v. Bishop, 416 Mass, at 181-82, and Commonwealth v. Fuller, 423 Mass. 216, 226 (1996), the Supreme Judicial Court previously has expressed disfavor with the practice of trial judge’s conducting an in camera review of privileged material in order to decide what material should be disclosed because of the potential for confusion between the roles of trial judge and counsel. Commonwealth v. Stockhammer, 409 Mass. 867, 882 (1991) (citations omitted). However, as an exercise of court’s discretion to take protective measures to guard against the embarrassment of a party or witness, Mass.R.Civ.P. 26(c), stage four of the Bishop protocol may provide the ideal protective measure. See Misitano v. Ghaffar, 1 Mass. L. Rptr. 405, 1993 WL 818688 *2 (Mass. Superior Court) (12/21/93) (Grasso, J.).