Gaziano, J.
The plaintiff, Peggi Robart (“Robart”) brought this tort action claiming in Count I that the defendant, Alamo Rent-a-Car, LLC (“Alamo”), was negligent in allowing a sign, and/or object, and/or a portion of the ceiling to fall on Robart’s head, causing her to sustain severe and permanent injuries. Counts II and III allege loss of consortium on the part of Robart’s two minor children. The matter is before this court on Alamo’s motion for the court to order the release of Robart’s psychiatric records from a hospitalization at Charles River Hospital (“CRH”) and records of outpatient treatment provided by Carol Lambert, LICSW. For the following reasons, the defendant’s motion is DENIED and plaintiffs cross motion to impound these pleadings is ALLOWED.
BACKGROUND
On March 11, 2002, Robart was a passenger on Alamo’s shuttle van which was taking her from the rental car drop off location to the Phoenix, Arizona airport. While en route, a portion of the ceiling and/or sign mounted on the shuttle van fell on her head. She claims as a result she sustained traumatic brain injuiy with serious cognitive deficits and consequently has been unable to earn a living. A neuropsychological evaluation was performed by Albert J. Berkowitz, M.D., on May 10, 2003 in order to determine if Robart was eligible for disability services. Dr. Berkowitz found that Robart’s cognitive function was significantly compromised as a result of her accident. He also found that she fulfilled the diagnostic criteria for Adjustment Disorder, severe.
DISCUSSION
Alamo argues that it needs the records of Robart’s psychiatric hospitalization at CRH, as well as Ms. Lambert’s treatment records in order to determine if her symptoms could be attributed to some cause other *155 than the accident in the Alamo van. Although Alamo admits such records are privileged under G.L.c. 233, §20B, it maintains that, since Robart has introduced her mental and emotional condition as an element of her claim, she has waived the privilege pursuant to §20B(c) by making her mental and emotional condition an element of her claim.[2] Alamo further argues, should the court find that the exception pursuant to G.L.c. 233, 20B(c) does not apply and Robart has not waived her privilege, in the interests of justice the court should order the Department of Mental Health, which holds CRH’s records, to release them pursuant to the procedure outlined in Commonwealth v. Bishop, 416 Mass. 169 (1993). It contends that an examination of the records could reveal that problems other than the accident were the cause of Robart’s alleged pain and suffering. Robart, on the other hand, argues that the records at issue are not relevant and that even if Alamo has made a facially sufficient showing of relevance, the court must review the records in camera before releasing them. She further requests that, should the court release the records following an in camera review, any mention of her minor children be redacted.
The court must determine whether Robart’s records fall under the statutory exception to the privilege outlined in G.L.c. 233, §20B(c). If the court determines that the records remain privileged, it must determine if the protocols discussed in Bishop, 416 Mass, at 180, and refined in Commonwealth v. Fuller, 423 Mass. 216, 223-26 (1996), are applicable in this case.
A. SECTION 20B(c) OF G.L. 233— STATUTORY EXCEPTION TO THE PRIVILEGE
In order to determine if Robart’s records should be released pursuant to G.L.c. 233, §20B, the court must determine first, whether, if the records are privileged pursuant to G.L.c. 233, §20B, Robart has made her emotional or mental condition an element of her claim, and second, whether the interests of justice in disclosure outweigh the patient’s right to confidentiality.
1. Whether Robart has Made Her Emotional or Mental Condition an Element of Her Claim
The court finds that records of both Robart’s inpatient hospitalization at CRH and her treatment with Carol Lambert, LICSW, are privileged under G.L.c. 233, §20B. Communications subject to this statutory privilege include “conversations, correspondence, actions and occurrences related to diagnosis or treatment before, during, and after institutionalization.” G.L.c. 233, §20B. Furthermore, records of treatment with a licensed social worker are similarly privileged.[3] G.L.c. 112, §135A. Therefore, both the hospital records and those of Ms. Lambert are privileged and protected from disclosure pursuant to G.L.c. 233, §20B.
The court must then decide if Robart has made her emotional or mental condition an element of her claim. Massachusetts courts have relied on Sabree v. United Bhd. Of Carpenters & Joiners of Am., Local No. 33, 126 F.R.D. 422, 426 (D.Mass. 1989), for the proposition that if a plaintiff brings a “garden variety” claim of emotional distress as opposed to a claim of psychic injuiy or psychiatric disorder, she has not made her emotional condition an element of the claim. Jacobs v. Vachon, 2000 WL 281665 at *1 (Mass.Super.Ct. Jan 28, 2000) (Hamlin, J.) (11 Mass. L. Rptr. 307) (claim for malpractice); Higgins v. Reslow, 1996 WL 1185128 at *2 (Mass.Super.Ct. May 2, 1996) (Houston, J.) (5 Mass. L. Rptr. 315) (claim for invasion of privacy and intentional infliction of emotional distress); Kippenhan v. Chaulk Serv., Inc., 1994 WL 879628 at *1 (Mass.Super.Ct. April 27, 1994) (Fremont-Smith, J.) (2 Mass. L. Rptr. 121) (claim for negligence); Boremi v. Lechmere, Inc., 1993WL818581 at*l (Mass.Super.Ct. Nov. 22, 1993) (Fremont-Smith, J.) (claim for wrongful detention). The Sabree court, however, did not define either a “garden variety” claim of emotional distress or a claim of “psychic injuiy or psychiatric disorder.” Sabree, 126 F.R.D. at 425. Some courts have found that plaintiffs who have alleged psychological injuiy necessitating psychiatric treatment, and plan to offer psychiatric testimony at trial have claimed psychic injury and made their emotional condition an element of the claim. Kippenhan, 1994 WL 879628 at *1 n.3; Boremi, 1993 WL 818581 at *1 n.3. The Jacobs court found that since the plaintiff had claimed “irreparable mental damage and extreme impairment of her mental health” she had introduced psychic damage to her claim. 2000 WL 281665 at *2. In Higgins, however, the court found that the plaintiff had only put forth a claim of emotional distress and therefore her mental condition was of a “garden variety” and not an element of her claim. 1996 WL 185128 at *2.
In Donovan v. Prussman, Judge Agnes, faced with a fact pattern veiy similar to that in the case at bar, found that the plaintiff had made her emotional condition an element of her claim. 2000 WL 1257463 at *4 (Mass.Super.Ct. Aug. 28, 2000) (Agnes, J.). In Donovan, the plaintiff alleged that as a result of an automobile collision with the defendant, she had suffered physical injuries, debilitating headaches, loss of memory, and inability to concentrate, resulting in loss of employment. Id. at *3. The court looked to juiy instructions and noted that, in a claim of negligence, a plaintiff is entitled to damages for pain and suffering, which includes mental and emotional pain and suffering. Id. at *4 The court stated that the issue was not the label the party assigns to her claim, but rather the nature of the injuiy and the damages that allegedly resulted. Id.
The case at bar is factually almost identical to Donovan. Robart alleges physical injuries and mental anguish. In her answers to interrogatories, she outlines numerous psychiatric sequelae from the accident, including inter alia, stress, anxiety, depression, *156 loss of energy, difficulty focusing, impaired memoiy, loss of function, and inability to work. Furthermore, she relies on the neuropsychological evaluation of Dr. Berkowitz, who determined that she fulfilled the DSM-4 diagnostic criteria for a psychiatric disorder. Robart has not made a “garden variety” claim of emotional distress, but rather has made her psychiatric disorder a central element of her claim. See Donovan, 2000 WL 1257463 at *4.
2. Whether the Interests of Justice Outweigh Robart’s Interest in the Confidentiality of the Records
Since Robart has made her emotional condition an element of her claim, the court must then decide whether, in addition to a showing of relevance, the “interests of justice" require the disclosure. Donovan, 2000 WL 1257463 at *5. The court must, therefore, balance the importance of Alamo’s access to the records with Robart’s interest in the confidentiality of her psychiatric records. Id.
In a civil action, when a patient makes his or her mental condition an element of the claim or defense, and the information in the privileged material cannot be obtained by other means, the party seeking access will be able to make a showing of need. Id. Judge Agnes in Donovan reviewed the development of the patient-psychotherapist privilege at the federal level in order to understand what the legislature intended by the “interests of justice” standard. Id. at *6. He referenced Vanderbilt v. Town of Chilmark, 174 F.R.D. 225 (D.Mass. 1997) (applying Massachusetts law), for the proposition that merely introducing one’s emotional or mental condition as an element in the case is insufficient to waive the privilege. Id. In Vanderbilt, Chief Justice Tauro rejected such a waiver and found that if the patient introduced the substance of the patient-psychotherapist communication, rather than its existence, he or she would have waived the privilege. 174 F.R.D. at 230; see also Sorenson v. H&R Block, 197 F.R.D. 199, 204 (D.Mass. 2000).
In Donovan, Judge Agnes concluded that when a patient has introduced his or her emotional or mental condition as an element of a claim or defense, disclosure of any privileged communication should not be allowed unless “(1) the patient calls the psychotherapist as a witness or introduces evidence of the communication through her own testimony or otherwise, or (2) the parly seeking access to the communication makes a specific showing that the truth-seeking function of the trial will be seriously impaired unless a disclosure of the communication is ordered.” Id. at *7. In that case, where the facts are very similar to the case at bar, the court ruled that the plaintiff had not waived her privilege and denied the defendant access to any such communications. Id. Therefore, although Robart made her emotional and mental condition an element of her claim, she is not seeking to admit the CRH records or calling Ms. Lambert to testify. Therefore, she has not waived her privilege pursuant to G.L.c. 233, §20B.
B. APPLICATION OF THE BISHOP/FULLER PROTOCOL
Alamo argues that, should the court determine Robart’s records to be privileged pursuant to G.L.c. 233, §20B, it must nevertheless release them pursuant to the protocol outlined in Bishop, 416 Mass, at 180, and refined in Fuller, 423 Mass, at 223-26. In Bishop, the Supreme Judicial Court delineated a five-pronged test to determine whether psychiatric records should be disclosed when the privilege has been asserted. 416 Mass, at 179-80. First, the court must decide if the records are privileged. Id. at 181. Second, the court must decide if the records are likely to be relevant to the issue in the case, and if so, conduct an in camera review to determine if the communications, or any portion thereof, are in fact relevant. Id. at 182. Third, those records that the court finds relevant must be produced for inspection by both counsel for the purpose of deciding if the trier of fact would require them in order to make a fair judgment. Id. Only those records that are absolutely and unavoidably necessary should be released, subject to a protective order presented in the Appendix. Id. Fourth, the court shall disclose only those records required for justice to be served, and may condition the disclosure on any appropriate terms or conditions. Id. at 182-83. The Court in Fuller narrowed the procedure for determining whether the court should hold an in camera review by holding that the parly requesting production must demonstrate “a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence that is relevant and material to the issue of the defendant’s guilt.” Fuller, 423 Mass, at 226.
The Bishop/Fuller protocol, however, is intended to resolve discovery requests in criminal cases. Some Massachusetts cases have applied the protocol to civil actions, stating that “the Court sees no reason why the procedural safeguards should be any less in a civil case. A defendant’s need for production of relevant records pertaining to a plaintiffs psychological condition is, if anything, greater that in a criminal case where the defendant’s freedom and reputation may be at stake, than in a civil case where money damages alone may be involved. Kippenhan, 1994 WL 879628 at *1; see also Perrin v. S&A Enters, Inc., 1999 WL 1327665 (Mass.Super.Ct. Feb. 16, 1999); Boremi 1993 WL 818581 at *1.
The Supreme Judicial Court distinguished between disclosure of records in the context of civil and criminal actions. Herridge v. Bd. of Registration in Med., 420 Mass. 154, 157 (1995). The Court stated that the Bishop principle “rests on Federal and State constitutional guarantees of due process that have applications in criminal proceedings.” Id. Therefore, the Bishop protocol did not apply to actions before an *157 administrative board, which are not penal in nature. Id. Other courts have found similarly and declined to apply to civil cases. In McLaughlin v. MacDonald’s Corp., the court rejected a Bishop analysis, stating “because these same federal and state constitutional guarantees of due process do not apply to civil proceedings, Massachusetts Courts have been reluctant to recognize such an exception to the privilege in civil proceedings.” 203 F.R.D. 45, 49 (D.Mass. 2001). The court noted that in a civil action, which is non-penal in nature, constitutional guarantees are not implicated, therefore, once a court determines that a record is privileged, that record should not be disclosed unless the patient waives the privilege or a statutory exception applies. Id.; see also Cunningham v. Doppelt, 1998 WL 1183950 at*l (Mass.Super. Feb. 13, 1999) (Zobel, J.); JME v. DRT, 1996 WL 680081 at *2 (Mass.Super. Nov. 6, 1996) (Botsford, J.) (6 Mass. L. Rptr. 183); Donovan, 2000 WL 1257463 at *5. Since the instant action is civil, Bishop/Fuller is not applicable, and the court therefore finds that the records cannot be released pursuant to the Bishop/Fuller protocol.
In this case, Robart has introduced her emotional and mental condition as an element of her claim, however her interest in the confidentiality of her records outweighs any interest in their disclosure. She does not intend to introduce the CRH records or call Ms. Lambert to testify at the trial. In addition, Robart’s psychiatric hospitalization occurred thirteen years ago and therefore is not sufficiently relevant to her current emotional condition to require disclosure of the record. Although Alamo argues that release of the records is necessary to determine if problems other than the accident caused Robart’s emotional difficulties, this argument does not rise to the level of making a “specific showing that the truth-seeking function of the trial will be seriously impaired” if either the CRH or Ms. Lambert’s records are not produced. Id. Furthermore, public policy considerations indicate that the disclosure of confidential information would have a “chilling effect” on the therapeutic relationship, and requiring a therapist to breach confidentiality might be a deterrent from getting treatment. Bishop, 416 Mass, at 175. Since Alamo has failed to meet its burden of showing that a trial would be seriously impaired without the records, and given Robart’s significant interest in maintaining the confidentiality of both her inpatient and outpatient treatment, the court will not order the release of either the CRH or Ms. Lambert’s records, and will allow Robart’s cross motion to impound the pleadings relative to this issue.
ORDER
For the foregoing reasons, it is therefore ORDERED that defendant’s motion for court order for release of privilege records is DENIED, and plaintiffs cross motion to impound the pleadings pertaining to release of these records is ALLOWED.

G.L.c. 233, §20B reads in relevant part:
Except as herein provided, in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceeding, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to diagnosis or treatment of the patient’s mental or emotional condition.
G.L.c. 233 §20B(c) reads in relevant part:
The privilege granted hereunder shall not apply to any of the following communications ... In any proceeding, except one involving child custody, adoption, or adoption consent, in which the patient introduces his mental or emotional condition as an element of his claim or defense, and the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.

Although both Robart and Alamo refer to G.L.c. 233, §20B as establishing a social worker-patient privilege, that privilege is statutorily mandated by G.L.c. 112, § 135A, and the relevant exception, outlined in G.L.c. 112, §135B is identical to G.L.c. 233, §20B(c).