SUPERIOR COURT 
 
 ARMELI LORA-PIMENTEL, PPA ADRIS PIMENTEL & others[1]vs. KAREN GIRARD, M.D. & another[2]

 
 Docket:
 1884CV01073
 
 
 Dates:
 June 23, 2020
 
 
 Present:
 /s/Robert B. Gordon Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO COMPEL PRODUCTION OF RECORDS FROM THE DEPARTMENT OF CHILDREN AND FAMILIES AND SOUTH BAY EARLY CHILDHOOD SERVICES 
 
 

             This case arises out of neurological damage that Plaintiff Armeli Lora-Pimentel allegedly suffered during her birth. Armeli, through her mother and next friend, Adris Pimentel, has brought claims for negligence, breach of warranty, and failure to obtain informed consent against Defendants Karen Girard, M.D. and Jane Blake, R.N., the medical providers attending to Armeli's mother during labor and delivery. Armeli's parents, Adris Pimentel and Jose Lora, have likewise brought claims against these Defendants for severe emotional distress resulting in substantial physical injury, loss of consortium, and damages arising from past and anticipated medical expenses. In connection with this motion, the Plaintiffs have waived their claims for severe emotional distress, asserting instead that they seek only emotional distress damages of the "garden variety."
            The Defendants now move to compel production of certain records from the Department of Children and Families (DCF) and South Bay Early Childhood Services (South Bay). In opposition, the Plaintiffs argue that the records sought are protected by the client-social worker privilege pursuant to G. L. c. 112, § 135B and the patient-psychotherapist privilege pursuant to
---------------------------
[1] Adris Pimentel and Jose Lora
[2] Jane Blake, R.N.
                                                            -1-
G. L. c. 233, § 20B.[3] For the reasons which follow, the Defendants' motion shall be ALLOWED in part and DENIED in part.
1. BACKGROUND
            Armeli was born August, 2016. The Plaintiffs allege that, by reason of the Defendants' conduct, Armeli experienced hypoxic ischemic encephalopathy during childbirth, resulting in serious neurological damage. The Defendants submit that Armeli began receiving services from South Bay shortly after her birth. The Defendants also assert that, in or around December of 2016, Armeli was taken into DCF custody for some period of time following a G. L. c. 119, § 51A investigation (the "51A investigation") into allegations that she suffered multiple injuries caused by non-accidental trauma.
            The Defendants now move to compel DCF to produce "any and all records pertaining to the minor Plaintiff Armeli Lora-Pimentel, and her parents... [or] [i]n the alternative, ... the complete file pertaining to Armeli Lora-Pimentel and the Lora-Pimentel family." The Defendants further move to compel South Bay to produce "certified copies of the records related to the minor plaintiff ... for the time period of August 2016 to the present."
2. DISCUSSION[4]
---------------------------
[3] Under both statutes, the party asserting the privilege must do so affirmatively. "Absent an affirmative assertion of the privileges established by G. L. c. 233, § 20B, and G. L. c. 112, § 135B, the court must treat such records as if they were unprivileged." Commonwealth  v. Oliveira, 438 Mass. 325, 337 (2002). The Court assumes for purposes of its decision that the records sought here in fact contain communications between patients and psychotherapists and social workers, as defined by the relevant statutes. As will be discussed infra, however, the Court nonetheless concludes that those communications are not privileged. In anticipation that this issue might later be subject to appellate review, the Plaintiffs are instructed to produce a Rule 26 privilege log, see Mass. R. Civ. P. 26(b)(5), to the extent they have not done so already, in which log they shall specify the scope of what is claimed to be privileged and "provide the information necessary to determine whether the person to whom the communication was made qualifies as a psychotherapist [or social worker] under the statute[s]." In re Adoption of Saul, 60 Mass. App. Ct. 546, 555 (2004), citing Oliveira, 438 Mass. at 334.
[4]Both the psychotherapist and social worker privilege statutes operate to protect from compelled disclosure communications regarding the diagnosis or treatment of mental or emotional conditions. Both statutes provide for the same exception, the central issue in this case, when a client "introduces his mental or emotional condition as an element of his claim or defense" G. L. c. 112, § 135B(c); G. L. c. 233, § 20B(c). The social worker privilege statute provides for an additional exception, G. L. c. 112, § 135B(f), which is also contested. For that reason, the Court will hereinafter address the social worker privilege statute alone.
                                                            -2-
            "Generally, discovery is permissible of any non-privileged material which is relevant to the pending action and reasonably calculated to lead to the discovery of admissible evidence. Mass. R. Civ. P. 26(b)(1)." Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec.  Co., 414 Mass. 609, 615 (1993). The parties' present dispute turns on whether the DCF and South Bay records are privileged. The Plaintiffs contend that the records fall within the client-social worker privilege and are thus not discoverable. The Defendants counter that the records fall within exceptions to that privilege. The Court agrees with the Defendants' position.
            a. Exception to social worker privilege — first requirement
            The social worker privilege protects client-social worker communications from disclosure, with a few exceptions, including
"[i]n any proceeding, except one involving child custody, adoption or adoption consent, in which the client [1] introduces his mental or emotional condition as an element of his claim or defense, and [2] the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between the client and the social worker be protected."
G. L. c. 112, § 135B(c). The Defendants assert that this first requirement for privilege exception is satisfied, because the Plaintiffs have alleged that Armeli suffered neurological damage and that her parents relatedly suffered emotional distress and a loss of consortium. The Plaintiffs disagree.
            As a threshold matter, the Plaintiffs have, in opposing the Defendants' motion, waived all claims for the parents' severe emotional distress. The Plaintiffs still seek to recover for Armeli's "anguish of mind." A "plaintiff seeking damages for emotional distress does not thereby waive the privilege unless there is also an allegation of psychological injury which necessitated 
                                                            -3-
psychiatric treatment. In other words, a garden variety claim of emotional distress does not waive the privilege but any claim of mental damage, psychic damage or impairment of mental health will operate as a waiver" (quotations and citations omitted). Conklin v. Feitelberg, 146 F. Supp. 3d 430, 434 (D. Mass. 2015) (Dein, USMJ).[5] The Plaintiffs characterize their remaining claims as ones seeking "garden variety emotional distress" damages, insufficient as a matter of law to waive the social worker privilege. The Court rejects this characterization. While the Complaint makes only general reference to "injuries," in opposing the Defendants' discovery motion, the Plaintiffs maintain that Armeli's harm — an essential element of her core negligence claim — is "neurological damage." Although neurological damage is physical, it surely has psychological and emotional dimensions as well. Courts have often held that plaintiffs who allege a combination of physical, psychological and emotional harms have necessarily introduced their mental condition as an element of their claims. See, e.g., Donovan, 12 Mass. L. Rptr. 65 at *4 ("plaintiff who alleges a physical injury accompanied by severe pain and suffering including
---------------------------
[5] While this overarching framework appears to center on the issue of damages, the focus of the statute itself is not so narrow, and in fact dictates a more fulsome consideration of the claims (and defenses) as a whole. See G. L. c. 112, § 135B(c) (first requirement for waiver met if plaintiff "introduces his mental or emotional condition as an element of his claim or defense"). Mindful of this language, a number of decisions of this Court have considered "the nature of [the] injury and the damages that allegedly resulted from it based on a consideration of all the circumstances" and whether the plaintiff's mental condition is a "central element of her claim." Donovan v. Prussman, 12 Mass. L. Rptr. 65 at *4 (Mass. Super. Ct. 2000) (Agnes, J.) The case at bar appears to fit this paradigm. Independent of the damages sought, Armeli's mental condition is central to her claim, because the harm she alleges is neurological and because the disputed cause of that harm is pivotal to liability. Many decisions in which courts have concluded that the first requirement for privilege waiver was met have involved facts similar to those of the case at bar: viz., the plaintiff's mental condition is not merely relevant to damages, but central to the underlying injury and the cause of same. See e.g., Donovan at *1, 4 (first requirement of waiver satisfied where plaintiff had a history of mental illness and alleged harms related to mental condition); Linscott v. Burns, 18 Mass. L. Rptr. 685 at * 1, 3 (Mass. Super. Ct. 2005) (Agnes, J.) (same); Conklin, 146 F. Supp. 3d at 435 (same). To be sure, these waiver decisions emphasize the kinds of damages sought when finding that the plaintiff's mental condition was introduced as an element of the claim. See e.g., Conklin, 146 F. Supp. 3d at 436 (first requirement of waiver met because plaintiff "alleges that she has become disabled due to the physical injuries and emotional harm that she suffered as a result of ... negligence, and she is seeking to recover damages for permanent impairment and the loss of her earning capacity"). Nevertheless, focusing too narrowly on damages would appear to betray the broader concerns of the statute, and leave open the unfair possibility that a plaintiff whose entire claim is permeated by issues related to a mental condition might be shielded from disclosing highly probative treatment records because of the kinds of remedies he seeks.
                                                            -4-
persistent headaches, loss of memory and ability to concentrate ...has introduced her mental or emotional condition as an element of her claim in this negligence action"); Robart v. Alamo  Rent-A-Car, LLC, 19 Mass. L. Rptr. 154 at *1, 3 (Mass. Super. Ct. 2005) (Gaziano, J.) (plaintiff introduced mental condition as element of claim by alleging "traumatic brain injury with serious cognitive deficits," along with "stress, anxiety, depression, loss of energy, difficulty focusing, impaired memory, loss of function"); Linscott, 18 Mass. L. Rptr. 685 at * 1, 3 (allegation of physical injury as well as depression satisfied first requirement of privilege waiver).[6] A claim of "neurological damages" like the one advanced by the Plaintiffs in this case fits squarely within the ambit of "mental damage, psychic damage or impairment of mental health." Conklin, 146 F. Supp. 3d at 434. The first prong of the social worker privilege exception is thus met.
            Further to the above, the parents' loss of consortium claims have likewise introduced their own mental conditions as elements of those claims. The Plaintiffs themselves concede in this connection that the Defendants are entitled to records from any period of time when Armeli was not in her parents' custody. Loss of consortium claims, however, depend on far more than mere physical custody:
"In explaining the parameters of loss of consortium of a child, we have stated that parents may recover for loss of filial society if they can show that [their child's] injuries are of such severity and permanence as to render [her] physically, emotionally, and financially dependent on them and that, as a result, their lives have been significantly restructured and their expectations of enjoying those experiences normally shared by parents and children have been seriously impaired" (quotations and citation omitted).
---------------------------
[6] Each of the courts in Robart, Linscott, Donovan and Conklin concluded that, although the plaintiff had introduced a mental condition as an element of her claim, thereby satisfying the first requirement of privilege waiver, the interests of justice (the second requirement) did not favor disclosure primarily because the plaintiff did not intend to call her mental health providers or otherwise introduce communications with them into evidence at trial. See, e.g., Robart, supra at *4 ("Robart has introduced her emotional and mental condition as an element of her claim; however, her interest in the confidentiality of the records outweighs any interest in their disclosure. She does not intend to introduce the [treatment] records or call [her provider] to testify at the trial.").
                                                            -5-
Reckis v. Johnson & Johnson, 471 Mass. 272, 303 (2015). To be sure, the elements of this particular claim center primarily on the child's injury and how such injury impacts the parents' lives. But in assessing whether parents have met their burden to prove loss of consortium, courts have often considered the injury's impact on their own mental condition. Id. at 303-304 (affirming verdict for parents on loss of consortium claim in part because parents testified to "distress caused by the [child's] pain"). Accord Woolf v. United States, 210 F. Supp. 3d 258, 264, 270 (D. Mass. 2016) (O'Toole, J.) (parents entitled to loss of consortium damages owing to "significant emotional stress" that minor son's injury caused). See also Ferriter v. Daniel O'Connell's Sons, 381 Mass. 507, 516 (1980), superseded on other grounds la St. 1985, c. 572, § 35, rewriting G. L. c. 152, § 24 (dependent minor children entitled to recovery for loss of parent's consortium, provided "dependence must be rooted not only in economic requirements, but also in filial needs for closeness, guidance, and nurture"). In the case at bar, the Plaintiff-parents' consortium claims place their mental condition directly at issue, once again demonstrating that the first prong of the social worker privilege exception is met.[7]
b. Exception to social worker privilege — second requirement
---------------------------
[7]Most reported Superior Court decisions involving loss of consortium claims and mental health records have not addressed privilege waiver, because the holder of the privilege did not bring the loss of consortium claim. See, e.g., Robart, 19 Mass. L. Rptr. 154 at *I (loss of consortium claim brought by children of alleged victim, whose mental health records defendant sought). In the present case, by contrast, the holders of the claimed privilege, Armeli's parents, are the parties who have brought the loss of consortium claims. In these circumstances, courts in other jurisdictions have found that the assertion of loss of consortium claims waived any privilege protecting communication between the holder of the privilege and their mental health providers. See e.g., Price v. City of San  Diego, 165 F.R.D. 614, 623 (S.D. Cal. 1996) (Battaglia, USMJ) ("psychological records have been placed at issue in this case as a result of plaintiffs' claim for loss of consortium and ... alleged inaccuracy of recollection regarding certain issues"); Nelson v. Womble, 657 So. 2d 1221, 1223 (Fla. Dist. Ct. App. 1995) (plaintiff seeking recovery for loss of consortium introduced mental condition as element of claim and waived statutory privilege protecting communications with psychotherapist). These authorities are persuasive.
                                                            -6-
            The exception's second prong requires that "the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between the client and the social worker be protected."[8] The interests of justice favor disclosure in this case. The DCF and South Bay records are plainly material to issues of both causation and damages related to Armeli's injuries and to the impact those injuries have had and are having on her parents. See Doe v. Messier, 20 Mass. L. Rptr. 567 at *2 (Mass. Super. Ct. 2006) (Locke, J.) ("defendant should have the opportunity to inquire into the plaintiffs treatment for the purpose of showing that the impairment to the plaintiffs mental health and other damages may have been caused by circumstances not involving the defendant"); Jacobs v. Vachon, 11 Mass. L. Rptr. 307 at *1-2 (Mass. Super. Ct. 2000) (Hamlin, J.) (in medical malpractice suit, therapist defendant permitted to access patient plaintiff's mental health record from other providers, because "defendant should have the opportunity to inquire into plaintiffs treatment for the purpose of showing that the impairment to plaintiffs mental health and other damages may have been caused by circumstances not involving the defendant"); Guimares v. Prete, 5 Mass. L. Rptr. 180 at *2 (Mass. Super. Ct. April 22, 1996) (Bassard, J.) (ordering limited disclosure where
---------------------------
[8]Certain Superior Court decisions have suggested that more is required to access a client's otherwise privileged mental health records:
                  "[I]n a case in which a patient introduces his or her mental or emotional condition as an element of a claim or defense, disclosure of communications between patient and psychotherapist [or social worker] under G.L. c. 233, § 20B(c) [or G. L. c. 112, § 135B(c)] should not be ordered unless (1) the patient calls the psychotherapist [or social worker] as a witness or introduces evidence of the communication through her own testimony or otherwise, or (2) the party seeking access to the communication makes a specific showing that the truth-seeking function of the trial will be seriously impaired unless a disclosure of the communication is ordered."
Donovan, 12 Mass. L. Rptr. 65 at *7. Although the Plaintiffs assert that they will not "introduce [at trial] evidence of any communications between them and any social worker or psychotherapist," and leaving aside the open question of law whether this concession should have the privilege-preserving effect they urge, the Court in all events finds that the Defendants have made the alternate showing. A fact-finder would be seriously impaired in determining the cause and extent of Armeli's harm without access to records pertaining to her treatment and to the unrelated allegations of non-accidental trauma she suffered. See infra.
                                                            -7-
"plaintiffs mental and physical health is a critical issue placed in issue by the plaintiff herself, and medical records may reveal mental and emotional distress caused by prior, unrelated events").
            The Plaintiffs counter that the Defendants have access to Armeli's medical records provided in the course of discovery and, with respect to the loss of consortium claims, other records that reflect any time she was not in her parents' custody. These records, however, may not speak to whether any intervening causes, such as the alleged non-accidental trauma Armeli suffered, contributed to her injury[9] or to the impact that such injury has had on her parents. These records likewise may not reveal the full extent of Armeli's injury, which may only have become apparent over time and with continued treatment of the kind she received at South Bay.[10] Compare Conklin, 146 F. Supp. 3d at 437 (plaintiff provided sufficient non-privileged records to defendant to assess whether accident or preexisting mental health issues caused deterioration in plaintiffs mental condition).
            Disclosing the DCF and South Bay records in this case will thus serve an important truth-seeking function, and it is the judgment of the undersigned that these interests of justice outweigh the public interest in preserving the confidentiality of patient-social worker communications. As a child under the age of four, Armeli has only a modest interest in the confidentiality of her own communications. Her parents have a greater interest in their communications remaining confidential, of course; but some of these communications were undoubtedly required by DCF in connection with its investigative function, and thereby always
---------------------------
[9] The Plaintiffs have "agreed that defense is entitled to all medical records which have been produced and obtained through the course of discovery." The Plaintiffs have not asserted that any disclosed medical records pertain to the alleged non-accidental trauma that prompted the DCF's 51A investigation.
[l0] South Bay informed the Defendants that it would not release the requested records without a court order. The Plaintiffs have not indicated that South Bay has provided records of any kind to the Defendants.
                                                            -8-
lacked the assurance of confidentially associated with typical client-social worker interactions. See G. L. c. 112, § 135B(f). See also Commonwealth v. Seabrooks, 433 Mass. 439, 449 (2001) (affirming disclosure of otherwise privileged communications during prison suicide-risk evaluation of defendant, in part because provider did not have "ongoing relationship that would have been damaged or destroyed by the disclosure of the communications"). Nonetheless, the parents' interests in privacy should be safeguarded to the greatest extent they can be without sacrificing the more compelling countervailing interests the Court has identified. Accordingly, with the exception of records related to any DCF 51A investigation, to which, as discussed below, the Defendants enjoy unqualified access, the Defendants shall only be entitled to records that pertain to Armeli's neurological condition, including those documenting any effect that such condition has had or is having on her parents. See Mass. R. Civ. P. 26(c)(2) (a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ...that the discovery may be had only on specified terms and conditions...").
            c. Additional exception to social worker privilege - 51A investigation
            The Defendants rightly contend that an additional exception to the social worker privilege applies to any 51A investigation records concerning alleged abuse or neglect of Armeli. By its express terms, the social worker privilege does not apply to 51A investigations. See G. L. c. 112, § 135B(f) (privilege does not apply in any "proceeding whereby the social worker has acquired the information while conducting an investigation pursuant to section fifty-one B of chapter one hundred and nineteen").[11] 51A investigations are generally confidential absent a court order. See
---------------------------
[11] A person concerned about a child's welfare files a report of abuse under G.L. c. 119, § 51A. The ensuing DCF investigation is governed by G.L. c. 119, § 51B, but these investigations are commonly referred to as "51A investigations."
                                                            -9-
G. L. c. 119, § 51E ("No such report shall be made available to any persons other than those specified in this section without the written and informed consent of the child's parent or guardian, the written approval of the commissioner, or an order of a court of competent jurisdiction"). Having found the subject records to be relevant to issues of both causation and damages, and with no social worker privilege applicable, the Court is here issuing such an order.
            The Plaintiffs argue that the Legislature included the 51A exception to the social worker privilege only to allow social workers to disclose their findings to child protection agencies. This argument is not convincing. The Legislature defined the scope of the confidentiality of 51A reports in G.L. c. 119, § 51E, and expressly permitted disclosure by court order. See, e.g., Murray v. Karzon, 423 Mass. 1007, 1008 (1996) (affirming denial of interim relief from housing court's order of in camera review prior to disclosure of 51A investigation records). DCF, in turn, has promulgated regulations to facilitate disclosure by court order. See 110 Code Mass. Regs. § 12.07 ("Whenever any Department records, documents or information are sought by compulsory legal process (subpoena, etc.) in any civil proceeding (for criminal proceedings, see 110 CMR 4.53), the Department shall not release such records until the Department has made reasonable efforts to notify each data subject identified in the records, so that he/she has reasonable time to seek to have the process quashed, in accordance with M.G.L. c. 66A, § 2(k)"). In this case, and for the reasons set forth ante, the relevance to the Plaintiffs' claims of any 51A investigation outweigh the Plaintiffs' competing interest in confidentiality, and thus warrant a court order for disclosure of all records related to any such investigation.
ORDER
            The Defendants' Motion to Compel is ALLOWED in part, as follows. The Department of Children and Families is hereby ordered to produce for the Defendants' inspection (subject to
                                                            -10-
the payment of reasonable reproduction costs) all records related to any investigation of Adris Pimentel and Jose Lora for neglect or abuse of their daughter, Armeli Lora-Pimentel. The Department of Children and Families and South Bay Early Childhood Services are hereby ordered to produce for the Defendants' inspection (subject to the payment of reasonable reproduction costs) all records pertaining to Armeli Lora-Pimentel's neurological condition, including those documenting any effect that such condition has had or is having on her parents. The Defendants' motion with respect to all other records in the possession of the Department of Children and Families and South Bay Early Childhood Services is DENIED.[12]
SO ORDERED.
/s/Robert B. Gordon Justice of the Superior Court
June 23, 2020
---------------------------
[12] Counsel are urged to agree to a mutually acceptable protective order to govern the terms under which the records subject to this Order may be used and disseminated during the pendency of litigation.
                                                            -11-
xxz